THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PAMELA DAHLIN, Defendant-Appellant.

Fifth District    No. 5—87—0586

Opinion filed June 5, 1989.

George H. Huber, of Vandalia, for appellant.

Don Sheafor, State's Attorney, of Vandalia (Kenneth R. Boyle, Stephen

E. Norris, and Raymond F. Buckley, Jr., all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE CHAPMAN delivered the opinion of the court:

Defendant, Pamela Dahlin, was indicted for bringing contraband into a penal institution under section 31A—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, par. 31A—1). Following a jury trial in the circuit court of Fayette County, she was convicted. Defendant presents for our review the question whether the trial court erred in refusing to direct a verdict for the defendant. Defendant raises two other contentions on appeal: (1) that she is entitled to a new trial because one of the defense witnesses was not sworn; and (2) the jury deliberations were interrupted by an overnight recess.

A review of the record shows that the State called five witnesses. State witness Officer Swain testified that on the date of the alleged incident, while performing his duties as a correctional officer, he observed the defendant park her car in the visitor's parking area and enter the main gate. This was at approximately 10 a.m. He was informed via radio dispatch that Pamela Dahlin was visiting Bruce Pagnoni. At approximately 12 noon Officer Swain observed the defendant come out of the prison, get into her car and drive to the south end of the parking lot. Once there, she got out of her car, put her dog on a leash and walked over to the prison yard fence. Officer Swain testified that from the defendant's actions it appeared to him that the defendant pushed something through the fence. Swain testified that he then saw someone on the other side of the fence bend over and apparently retrieve the package.

Officer Swain's observations were supported by the testimony of Charles Schilling, who was also called on behalf of the State. Officer Schilling was on duty as an outside security patrolman on the date in question. He testified that around noon he saw the defendant leave the prison, get into her car and drive to the south of the visitor's parking area, where she stopped, got out and removed her dog. He observed the defendant then bend over at the waist and reach into the car. The defendant then walked the dog to the prison yard fence where she bent over and placed a small item through the chain-link fence. It was at that moment Officer Schilling saw Bruce Pagnoni, who was on the other side of the fence, bend over and retrieve a small package. He testified that Pagnoni headed back towards the prison and that when he reached the sidewalk in front of the prison, he attempted to throw the package into a trash bin, but missed.

Pagnoni was apprehended by the prison patrolmen, and Officer Schilling directed Captain Gardner to pick up the package Pagnoni had thrown.

The testimony of State's witnesses Lieutenant Ron Rosborough and Captain Garner, also correctional officers at the prison, corroborated Officer Schilling's testimony that Bruce Pagnoni tossed an object toward the trash bin. Garner retrieved the object and handed it to Rosborough, who later took it to the crime lab in Springfield, Illinois, for processing. Forensic scientist Michael Cravens performed tests on the item at the crime lab. He testified that the package contained hand-rolled cigarettes and that his tests showed the contents of the cigarettes to be cannabis.

The defense presented Bruce Pagnoni, who testified that on the day in question his girlfriend, Pamela Dahlin, came to visit him. He stated that after their visit he was escorted to the prison yard and outside the fence he happened to see the defendant walking their dog. Pagnoni said that he and Dahlin had had the dog since it was six weeks old and he wanted to see it, so he ran over to the fence. It was his testimony that the dog was up next to the fence, and Pamela was standing in back of the dog about seven feet away, holding the dog by its leash. He stated that nothing was passed through the fence, and he did not see the defendant attempt to pass anything through the fence. Pagnoni said that at that moment he heard and saw a correctional officer's vehicle approaching so he started to run back towards the prison yard. When he saw the officers approaching him, he reached into his pants to grab a package of cannabis and then threw it towards the trash bin to dispose of it. Pagnoni testified that cannabis is easily available in the prison, and an inmate can generally purchase a "joint" in exchange for two packs of cigarettes. He stated that this particular package of cannabis had been purchased by him a few days prior to the incident alleged herein.

Pamela Dahlin took the stand on her own behalf and testified that after her visit with Bruce Pagnoni she took her dog for a walk near the prison yard fence. The dog picked up a piece of paper that had some ants on it, so Ms. Dahlin bent over and removed the trash from the dog's mouth. The defendant testified that she was never any closer than a foot and a half from the fence. When she saw Pagnoni come over to her, she pulled the dog back, got into her car and left almost immediately. When asked why she reacted the way she did when Pagnoni came to the fence, Dahlin testified that on an earlier occasion she had asked the prison personnel at the main gate whether it was possible for Bruce Pagnoni to see the dog, and they

told her no. She said that because they told her it wasn't possible for him to see the dog, she didn't think it was a good idea for Bruce to come over to the fence.

At the conclusion of the State's evidence, the defense moved for a directed verdict arguing that the State's witnesses' testimony was based on assumptions and not on actual observations of what was alleged to have transpired between Pamela Dahlin and Bruce Pagnoni. The defense argued that Officer Swain didn't actually see an object being passed through the fence, but merely saw the defendant bend over at the fence. Counsel for the defendant challenges the observation of Officer Schilling, stating that Schilling did not actually see the defendant pass a package through the fence, but only observed Dahlin reach out her hand with a closed or clinched fist. The court denied defendant's motion for directed verdict. At the close of all the evidence, defendant again moved for a directed verdict, arguing that the circumstantial evidence was insufficient to establish her guilt beyond a reasonable doubt.

■■ A conviction may be sustained on circumstantial evidence, and the trier of fact is not required to disregard the inferences to be drawn from the evidence in order to find guilt beyond a reasonable doubt. (*People v. Hall* (1986), 114 Ill. 2d 376, 409, 499 N.E.2d 1335, 1348.) While circumstantial evidence must produce a reasonable and moral certainty that the defendant committed the crime, the jury need not be satisfied beyond a reasonable doubt as to each link in the chain of circumstances relied upon to establish guilt, but rather it is sufficient if all the evidence taken together satisfies the jury beyond a reasonable doubt of defendant's guilt. (*People v. Franklin* (1985), 130 Ill. App. 3d 514, 521, 474 N.E.2d 776, 780; *People v. Stewart* (1985), 105 Ill. 2d 22, 66, 473 N.E.2d 840, 862.) It is for the trier of fact to determine the weight and sufficiency of the evidence, and that determination will not be reversed unless the evidence is so improbable as to create a reasonable doubt of the defendant's guilt. (*People v. Stewart* (1985), 105 Ill. 2d 22, 66, 473 N.E.2d 840, 862; *People v. Franklin* (1985), 130 Ill. App. 3d 514, 521, 474 N.E.2d 776, 780.) We find no merit in the defendant's claim that the circumstantial evidence was insufficient to prove her guilt beyond a reasonable doubt.

■■ Defendant next argues that she should be granted a new trial since the evidence does not establish that the witness Bruce Pagnoni was sworn. The defense called Bruce Pagnoni as a witness at trial. At no time during the taking of the testimony did counsel object to Pagnoni's apparent unsworn testimony. Defendant first

raised the issue of whether Pagnoni had been sworn in her motion for a new trial. At the hearing on the post-trial motion, counsel for the defendant advised the court that it wasn't until after the close of all the evidence that he was informed that Bruce Pagnoni believed he had given unsworn testimony.

Under the circumstances, even assuming that Bruce Pagnoni was not sworn, a reversal on such grounds would not be warranted. In *People v. Krotz* (1930), 341 Ill. 214, 172 N.E. 135, the defendant insisted that the prosecuting witness was not sworn before she testified, and therefore her testimony was of no force and effect and was not entitled to be considered by the court. The court refused to reverse on such grounds, reasoning that no objection was made at trial that the witness was not sworn and defendant was represented by counsel who examined the witness without reservation. Similarly it has been held that when an officer has not been sworn, the defendant should object to the irregularity at the time. (*People v. Newsome* (1919), 291 Ill. 11, 125 N.E. 735.) In *Newsome*, the court stated it is the duty of plaintiff in error and counsel to take notice of all the steps taken in the progress of the trial, and they have no right to stand by and permit irregular proceedings to take place and then argue such irregularities to be error. With this in mind, we find that a reversal is not warranted in this case.

■■ ■ Defendant also seeks reversal on the ground that the trial court interrupted jury deliberations, permitted the jurors to retire to their homes for the night, and then resumed deliberations the following morning. Section 115—4(l) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 115—4(l)) provides:

"When the jury retires to consider its verdict an officer of the court shall be appointed to keep them together and to prevent conversation between the jurors and others. *** Upon agreement between the State and defendant or his counsel the jury may seal and deliver its verdict to the clerk of the court, separate, and then return such verdict in open court at its next session."

In the instant case the jury retired at 9:50 p.m. At 10:55 p.m. the jury was brought into the box, where the court ordered a recess and then instructed the jurors to return to their deliberations the following morning at 8:30 a.m. The court admonished the jurors:

"Please do not discuss this case with anyone. Don't discuss it with your spouses or your family, your friends. You, of course, can tell them what your schedule is, but don't talk about the substantive issues in the case.

If anyone attempts to talk to you about the case or influences you in any way, it is your obligation to tell me about that immediately or tell my bailiffs or the clerk so I can deal with that at the time."

Defendant relies on *People v. Ritzert* (1974), 17 Ill. App. 3d 791, 308 N.E.2d 636, as authority for reversal of this cause. In *Ritzert*, defendant's conviction of driving while intoxicated was reversed and a new trial granted as the jury was permitted to separate and retire to their homes for the night and return the next morning to resume deliberations. In *Ritzert*, prior to interrupting the jurors' deliberations and sending them home for the evening, the court requested counsel to agree on a proper procedure to be taken. The State preferred to have the jurors return to deliberate in the morning. Defense counsel argued that a mistrial should be declared. Despite counsel's disagreement, the court recessed the jurors until morning. The next morning when they returned to deliberate, the defense objected to the separation of the jurors and the court noted that no objection had been made at the time of the jury's release. On appeal the second district reversed defendant's conviction.

We choose not to follow the holding in *Ritzert* that the requirements of section 115—4(l) cannot be waived by agreement of the parties. Instead we adopt the holding of *People v. Jackson* (1982), 105 Ill. App. 3d 750, 433 N.E.2d 1385, which rejected the holding in *Ritzert*. The *Jackson* court held that waiver of section 115—4(l) requirements is recognized where such waiver is knowingly and intelligently made. (*People v. Jackson* (1982), 105 Ill. App. 3d 750, 758, 433 N.E.2d 1385, 1391.) In that case defense counsel agreed to allow the jury to retire to their homes for the evening. Defendant did not object the following morning when the jury returned and resumed deliberations. Defendant did not raise objection until his post-trial motion, and did not show evidence that the jurors were subjected to any improper influences during the period of their separation.

The facts in the case at bar very much parallel those in *Jackson*. In the instant case, defense counsel at no time prior to his post-trial motion questioned the court's release of the jurors. Similarly, defendant was unable to present evidence that the jurors were subjected to any improper influences during their separation. For the conduct of the jury to constitute grounds for setting aside the verdict, it is necessary that a showing be made that the defendant was prejudiced by such separation. (*People v. Allen* (1952), 413 Ill. 69, 79, 107 N.E.2d 826, 831.) Where defendant, through her attorney, agreed to allow the jury to go home for the evening and made no objection to the

procedure the following morning, defendant had knowingly and intelligently waived the statutory requirement of section 115—4(l). *People v. Dungy* (1984), 122 Ill. App. 3d 314, 323, 461 N.E.2d 485, 491; *People v. Jackson*, 105 Ill. App. 3d 750, 758, 433 N.E.2d 1385, 1391.

For the reasons herein stated, the judgment of the circuit court of Fayette County is affirmed.

Affirmed.

GOLDENHERSH and RARICK, JJ., concur.