THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL LOPEZ, Defendant-Appellant.

Fifth District   No. 5—92—0008

Opinion filed March 16, 1993.

Daniel V. O'Brien and Lawrence A. Baerveldt, both of St. Louis, Missouri, for appellant.

Robert Haida, State's Attorney, of Belleville (Norbert J. Goetten, Stephen E. Norris, and Scott A. Manuel, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE CHAPMAN delivered the opinion of the court:

The defendant, Michael Lopez, was convicted of one count of unlawful delivery of a controlled substance, cocaine (Ill. Rev. Stat. 1991, ch. 56½, par. 1401(a)(2)(A) (now 720 ILCS 570/401 (West 1992))), at a bench trial in the circuit court of St. Clair County. Defendant was sentenced to a six-year term of imprisonment. On appeal defendant contends that there was insufficient evidence to find him guilty beyond a reasonable doubt, and that he was denied effective assistance of counsel at trial. We affirm.

Before addressing the merits, we must first consider the effect of defendant's failure to raise the issues of sufficiency of the evidence and ineffective assistance of trial counsel in his post-trial motion. The only issue defendant raised in his post-trial motion was a challenge to the criminal information. Generally, the failure to raise an issue in a motion for a new trial results in a waiver of the issues sought to be raised on appeal. (*People v. Marron* (1986), 145 Ill. App. 3d 975, 496 N.E.2d 297.) Exceptions to this rule have been made, however, where the allegation of error would not normally be expected to be included in the post-trial motion (such as an allegation of ineffective assistance of counsel) or if the reviewing court elects to take notice of plain errors affecting substantial rights pursuant to Supreme Court Rule 615(a) (134 Ill. 2d R. 615(a)). (See *People v. Friesland* (1985), 109 Ill. 2d 369, 375, 488 N.E.2d 261, 263; *People v. Harrawood* (1978), 66 Ill. App. 3d 163, 383 N.E.2d 707.) Because the issues concerning the sufficiency of the evidence and the alleged ineffective assistance of counsel are recognized exceptions to the waiver rule, we will address them.

At trial Charley Sheppard, a codefendant, testified that in exchange for being permitted to plead guilty to a lesser charge he agreed to testify in defendant's case. Sheppard testified that in February of 1991, a friend of his, Lester Briggs, telephoned to make arrangements for Sheppard to sell one ounce of cocaine to Robert Goodman. Sheppard was unaware that Goodman was a police officer. During the evening of February 28, 1991, Sheppard met Briggs and Goodman at the Hardee's restaurant parking lot in O'Fallon, Illinois. Goodman was reluctant to pay Sheppard for the

cocaine until he could examine it, so Sheppard advised Goodman that he would retrieve the cocaine from his supplier, Michael Lopez.

Sheppard testified that earlier that week he had made arrangements for Lopez to bring him two ounces of cocaine. During the evening of February 28, Sheppard drove to a McDonald's restaurant where he met with Lopez. Lopez got into Sheppard's car, and they drove around the restaurant parking area. Lopez gave Sheppard a McDonald's bag containing two ounces of cocaine, each of which was packaged in a separate, clear plastic bag. Sheppard testified that he paid Lopez $1,800 but that the money was for "prior meetings that had nothing to do with that." Sheppard testified that the cocaine was worth $1,600 an ounce. He told Lopez that he would get him the money for the Goodman transaction later in the week. Sheppard returned to the Hardee's restaurant where he again met Briggs and Goodman in the parking lot. Sheppard showed Goodman the two ounces of cocaine. Goodman purchased one ounce and paid $1,600. Three hours later Sheppard was arrested at his home. Sheppard testified that he flushed the second ounce of cocaine down the toilet.

Robert Goodman testified that he is a police officer and has had special training in narcotics and controlled substances. He testified that on February 28, 1991, he and a confidential informant, Lester Briggs, went to the Hardee's restaurant to purchase one ounce of cocaine from Charley Sheppard. Goodman testified Sheppard told him to stay put and that he would be back with an ounce of cocaine for him as soon as he could. When Sheppard left the Hardee's parking lot, Goodman advised his assisting police officers that Sheppard was en route to meet his supplier. Approximately 20 minutes later Sheppard returned to Hardee's, got out of his car and came over to Goodman's vehicle. He reached into his coat pocket and pulled out a McDonald's sack and handed it through the window to Goodman. Inside the sack was a plastic bag with approximately one ounce of what appeared to be cocaine. Goodman testified that he told Sheppard that the cocaine did not appear to be as chunky as the last cocaine that he had sold. Sheppard then reached into his coat pocket and produced a second ounce of cocaine. Goodman took the second package, gave the original package back to Sheppard and paid him $1,600.

Police officer John Stover testified that during the evening of February 28, 1991, he was on duty as a surveillance officer and was stationed outside Sheppard's residence. Stover observed Sheppard leave his residence around 7:30 p.m. and proceed directly to the

Hardee's restaurant where he met with Goodman and Briggs. Stover followed Sheppard to the McDonald's restaurant and while sitting approximately 100 yards away observed the occupants of a pickup truck get into Sheppard's car. Stover testified he may have used binoculars to observe Sheppard's actions at McDonald's, but he does not recall whether he did so or not. Stover testified that he was not close enough to observe whether or not the person in the pickup truck was carrying anything when he got into Sheppard's vehicle. Sheppard's car circled the parking area a few times, the occupants of the pickup truck returned to their vehicle, and Sheppard returned to Hardee's. Stover testified that Sheppard was at the McDonald's restaurant for approximately six minutes. Stover followed Sheppard back to Hardee's where he saw Sheppard meet with Goodman. Stover testified that from the time he saw Sheppard leave his residence to the time Sheppard left the Hardee's lot the second time he did not lose sight of him.

Clinton Cook, a police officer, testified that he was assigned to surveil Goodman's purchase of cocaine from Sheppard. Cook followed Sheppard to the McDonald's restaurant. Cook testified that neither Sheppard nor Lopez went inside the restaurant, but instead they drove around the parking lot. Cook testified that from his vantage point, approximately 150 yards away, he could not tell whether or not the occupant of the pickup truck had anything in his hands when he got into Sheppard's vehicle or when he returned to his pickup truck. After the suspects drove away, Cook followed Lopez, stopped his vehicle, and placed Lopez under arrest. Cook searched Lopez' pickup truck and found an envelope containing $1,800. Cook testified that Lopez told him at that time that the money was given to him by Sheppard. Lopez did not say what the money was for.

Lopez contends that he was not found guilty beyond a reasonable doubt. He argues in particular that Sheppard's testimony lacked credibility. Lopez contends that accomplice testimony is inherently suspect and should only be accepted with the utmost caution, especially in a case such as this where Sheppard agreed to plead guilty to a Class II felony rather than go to trial on the Class X felony charges pending against him. Sheppard received a three-year prison sentence and testified that in exchange for his testimony he would not be charged with several previous narcotics sales.

While accomplice testimony is subject to careful scrutiny, such testimony, whether corroborated or not, is sufficient to sustain a criminal conviction if it convinces the trier of fact of the defend-

ant's guilt beyond a reasonable doubt. (*People v. Williams* (1991), 147 Ill. 2d 173, 233, 588 N.E.2d 983, 1006; *People v. Young* (1989), 128 Ill. 2d 1, 538 N.E.2d 461.) A beneficial plea bargain agreement is not sufficient reason for an accomplice's testimony to be unworthy of belief. (*People v. Jackson* (1986), 145 Ill. App. 3d 626, 639, 495 N.E.2d 1207, 1218.) The credibility of a witness and the weight to be given the testimony are determinations exclusively within the province of the finder of fact. *People v. Collins* (1985), 106 Ill. 2d 237, 261-62, 478 N.E.2d 267, 277.

Lopez argues that there are numerous discrepancies in Sheppard's testimony and that his testimony was not supported by corroborating evidence. For instance, it is undisputed that Sheppard gave Lopez $1,800 at their meeting on February 28, 1991. However, throughout the trial Sheppard maintained that the money was for "prior meetings" and had nothing to do with the purchase of the cocaine. In addition, Lopez points out alleged discrepancies regarding the events at McDonald's restaurant. When asked if Lopez had the McDonald's sack containing the drugs in his hand when they met, Sheppard responded affirmatively. However, when asked if the defendant had the sack concealed, Sheppard answered: "Yeah. I guess in his coat." Sheppard further testified: "I didn't see it until he brought it out into my car." Lopez also notes discrepancies in how the delivery was made. Sheppard testified that he kept the two bags inside the McDonald's sack after receiving the drugs from the defendant. When Sheppard met with Goodman he pulled the McDonald's sack from his coat. Sheppard testified that he pulled one bag of cocaine out of the sack and gave it to Goodman. Goodman then examined and returned that bag to him. Sheppard testified that he then pulled the second bag of cocaine from the McDonald's sack and handed it to Goodman. Officer Goodman testified that Sheppard reached into his coat and pulled out a McDonald's sack which contained one bag of cocaine. Goodman held the first bag while Sheppard reached into his coat pocket and produced a second bag of cocaine.

Lopez argues that not only is the manner of the delivery disputed, but whether or not Sheppard actually received two ounces of cocaine from Lopez is disputed. Lopez refers in particular to Sheppard's statement at trial that upon arrest he only told the police officers about one ounce of cocaine. At trial Sheppard testified that Lopez gave him two packages, each containing one ounce of cocaine.

In addition to the alleged discrepancies, Lopez asserts that there is no credible evidence to support the testimony of the accomplice, Charley Sheppard. Officer John Stover testified that he was on surveillance approximately 100 yards from the McDonald's restaurant and was not close enough to notice whether either Lopez or Sheppard was carrying anything. Officer Clinton Cook, also on surveillance of the area, testified that he could not tell whether defendant had anything in his hands. Neither officer was privy to the conversation between Lopez and Sheppard. Lopez argues that the officers' testimony does not establish him as the supplier of the cocaine. All that is established by their observations is that Sheppard met with Lopez that evening.

Defendant analogizes this case to *People v. Gnat* (1988), 166 Ill. App. 3d 107, 519 N.E.2d 497. In *Gnat* the appellate court reversed the defendant's conviction of unlawful delivery of a controlled substance because it found the uncorroborated testimony of an accomplice was insufficient to sustain the conviction. In *Gnat* the evidence showed only that the accomplice was seen talking to the defendant and then the accomplice went, unobserved, to a parking lot where, according to the accomplice's testimony, he retrieved the drugs from the defendant's unlocked car. The court noted that there was no evidence establishing the ownership or even the existence of an unlocked car from which the drugs allegedly came. *Gnat* is distinguished from the instant case because in *Gnat* there was absolutely no evidence, other than the word of the accomplice, tying the defendant to the drugs. In the case at bar, Sheppard was observed by police with Lopez at the McDonald's restaurant. Both Sheppard and Officer Goodman testified that Sheppard had a McDonald's sack which contained the cocaine. Assuming that Sheppard did not have the drugs until he met with the defendant, a reasonable inference is drawn that Sheppard received the drugs from Lopez. Furthermore, in this case Lopez admitted to receiving $1,800 from the accomplice. Unlike *Gnat*, there was circumstantial evidence that the defendant delivered the drugs to Sheppard.

When presented with a challenge to the sufficiency of the evidence, it is not the function of the appellate court to retry the defendant. (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277; *People v. House* (1986), 141 Ill. App. 3d 298, 303, 490 N.E.2d 212, 216.) The evidence must be viewed in the light most favorable to the prosecution and the judgment upheld if any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. (*Collins*, 106 Ill. 2d at 261, 478 N.E.2d at 277.)

A conviction may be upheld on circumstantial evidence, and the trier of fact is not required to disregard the natural inferences to be drawn from the evidence in order to find guilt beyond a reasonable doubt. *People v. Dahlin* (1989), 184 Ill. App. 3d 59, 63, 539 N.E.2d 1293, 1295-96.

■■ The alleged discrepancies in the testimony do not go to the underlying inferences which can be drawn from the evidence. Sheppard testified that when he first met Goodman he did not yet have the drugs with him, which necessitated a meeting with his supplier. Sheppard went directly to meet with Lopez and then went directly back to meet with Goodman. Sheppard made no stops en route to McDonald's or on his return trip to Hardee's restaurant. While Lopez makes much of the fact that the officers on surveillance did not observe anything in the defendant's hands, Sheppard testified that he gave $1,800 to Lopez, and Lopez agreed that Sheppard gave him the money. It is for the jury to resolve any conflicts in the evidence. (*Collins*, 106 Ill. 2d at 261, 478 N.E.2d at 277.) While the jury need not be satisfied beyond a reasonable doubt as to each link in the chain of circumstances relied upon to establish guilt, it is sufficient if all the evidence taken together satisfies the jury beyond a reasonable doubt of defendant's guilt. (*Dahlin*, 184 Ill. App. 3d at 63, 539 N.E.2d at 1296.) After reviewing the record we conclude that Sheppard's testimony, along with the inferences to be drawn from the circumstances, supports the trial court's verdict.

The second issue raised by the defendant is whether he was denied the effective assistance of trial counsel because his lawyer is not licensed in Illinois.

On September 3, 1991, six months after entering his appearance in the case, defendant's counsel, Sean O'Hagen, filed an "Entry of Appearance/Motion for Continuance." The motion indicates that an application to proceed *pro hac vice* was filed contemporaneously therewith, but neither the application nor an order allowing counsel to proceed *pro hac vice* appears in the record. An order signed by the trial judge on the same day granted the continuance but failed to address the matter of counsel's lack of an Illinois law license. The State concedes that the attorney representing defendant in the trial court was not licensed in Illinois. The record indicates that he is licensed in Missouri. The State argues that defendant has failed to demonstrate that his attorney's lack of either an Illinois license or an order *pro hac vice* prejudiced him in any way.

The sixth amendment of the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the

right *** to have the Assistance of Counsel for his defence." (U.S. Const., amend. VI.) The constitutional question before us is whether a criminal defendant in Illinois is denied his sixth amendment right where his trial lawyer was licensed in another State but not licensed in Illinois and was not admitted *pro hac vice* in Illinois.

Deviating for a moment from the criminal context, our attention is drawn to the civil arena where courts have addressed the issue of out-of-State attorneys practicing law in Illinois. Three civil cases which represent the manner in which the issue has been addressed in the civil realm are *Lozoff v. Shore Heights, Ltd.* (1976), 35 Ill. App. 3d 697, 342 N.E.2d 475, *aff'd* (1977), 66 Ill. 2d 398, 362 N.E.2d 1047, *Fruin v. Northwestern Medical Faculty Foundation, Inc.* (1990), 194 Ill. App. 3d 1061, 551 N.E.2d 1010, and *McEvers v. Stout* (1991), 218 Ill. App. 3d 469, 578 N.E.2d 321. Each of these cases is premised on the general rule that an attorney not licensed in Illinois may not practice law in this State. In *Lozoff* the court barred recovery to a Wisconsin lawyer for legal services he performed in Illinois. In *Fruin* the first district dismissed plaintiff's cause of action as a nullity because the lawyer who filed the complaint was not licensed in Illinois. In *McEvers*, however, the fourth district refused to follow *Fruin* in order to avoid unnecessary injustice. While we agree with *McEvers* that "a nullity rule appears to punish the litigant rather than the offending attorney" (*McEvers*, 218 Ill. App. 3d at 472, 578 N.E.2d at 322), we also agree that due to the different procedural and evidentiary requirements of the various States there is good reason to restrict the practice in Illinois to those persons licensed by the supreme court.

Defendant is asking, however, that we impose a *per se* rule that nonlicensure equals incompetency. Perhaps the presumption of competency (see *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052) should not attach to a nonlicensed lawyer's acts on behalf of a criminal defendant, but we are unwilling to adopt a *per se* rule of incompetency.

Queries of what constitutes the sixth amendment right to counsel are not new to the courts. In fact, the recent Illinois Supreme Court case, *People v. Brigham* (1992), 151 Ill. 2d 58, 600 N.E.2d 1178, dealt with two sixth amendment questions: (1) whether a defendant is denied the sixth amendment right to counsel where he is represented by a nonlawyer, and (2) whether a defendant is denied the sixth amendment right to counsel where his lawyer is licensed in Illinois but is delinquent in paying State bar dues. With regard to the second issue, the *Brigham* court held that nonpay-

ment of dues alone does not render counsel ineffective. The court observed that the cases it cites in support of its holding note an important distinction between unlicensed persons and attorneys admitted to practice but under suspension for nonpayment of State bar dues: "Overwhelmingly, they hold that representation by members of the former category constitutes denial of defendant's *right to counsel*, whereas representation by members of the latter category does not." (Emphasis added.) *Brigham*, 151 Ill. 2d at 67, 600 N.E.2d at 1183.

The distinction made in *Brigham* focuses on the operative words of the sixth amendment, "right to counsel." Counsel has been defined as "a duly licensed and qualified lawyer, and not an attorney in fact or a layman." (*People v. Cox* (1957), 12 Ill. 2d 265, 269, 146 N.E.2d 19, 22.) It is undisputed that defendant's trial attorney is a lawyer. Query, is defendant's attorney's status as a lawyer vitiated under the circumstances of this case because he was not admitted *pro hac vice*? We think not. The out-of-State attorney, whether or not admitted *pro hac vice*, is still an attorney. In *Reese v. Peters* (7th Cir. 1991), 926 F.2d 668, the court observed:

> " 'Counsel' in 1791 meant a person deemed by the court fit to act as another's legal representative and inscribed on the list of attorneys. *** Courts grant motions allowing representation by persons who do not belong to their bars. Usually the person admitted *pro hac vice* belongs to *some* bar, but it may be the bar of a distant state or foreign nation. The enduring practice of admission *pro hac vice* demonstrates that there is no one-to-one correspondence between 'Counsel' and membership in the local bar." *Reese*, 926 F.2d at 669-70.

In *Johnson v. State* (1979), 225 Kan. 458, 590 P.2d 1082, a case which the *Brigham* court found instructive, the court stated: "Just as the payment of the fee does not guarantee that an attorney will practice law in a competent manner, the nonpayment of the fee does not necessarily imply that the nonpaying attorney will perform in an incompetent manner." (*Johnson*, 225 Kan. at 465, 590 P.2d at 1087.) This logic is easily applied to the issue at bar: Just as the grant of a petition to proceed *pro hac vice* does not guarantee that an attorney will practice law in a competent manner, the failure to file a petition to proceed *pro hac vice* or to enter an order allowing such a petition does not necessarily imply that the out-of-State attorney will perform in an incompetent manner. Whether licensed in Illinois or not, counsel's effectiveness for sixth amendment purposes is determined by the standards set forth in *People v. Albanese*

(1984), 104 Ill. 2d 504, 473 N.E.2d 1246, *cert. denied* (1985), 471 U.S. 1044, 85 L. Ed. 2d 335, 105 S. Ct. 2061.

In order to establish that he was denied effective assistance of counsel, defendant must show that his counsel's performance was deficient, that is, counsel made errors so serious he was no longer functioning as the "counsel" guaranteed by the sixth amendment, and that the deficient performance prejudiced his defense, that is, counsel's errors were so serious as to deprive defendant of a fair trial. (*People v. Albanese* (1984), 104 Ill. 2d 504, 525-26, 473 N.E.2d 1246, 1255, citing *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) Counsel's performance is considered deficient if it falls below an objective standard of reasonableness. (*Strickland*, 466 U.S. at 688, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.) It is not enough to show that counsel's errors had some conceivable effect on the outcome of the proceedings. To establish actual prejudice, defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. (*Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.) We need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, then that course should be followed without determining whether counsel's performance was deficient. *Strickland*, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069.

■ In the instant case defendant argues that his attorney's performance fell below the *Strickland* standard by the very fact that his attorney was not licensed in Illinois and did not receive permission to proceed *pro hac vice*. Defendant has not shown how the failure to take the formal step of having an order entered permitting him to proceed *pro hac vice* prejudiced his defense. A violation of the sixth amendment does not result from the single circumstance, unaided by other facts, that defendant's counsel is unlicensed in Illinois. We conclude that defendant was not denied the effective assistance of counsel simply because his lawyer was not licensed to practice in Illinois.

There remains to be resolved defendant's argument that he was denied the effective assistance of counsel because his attorney: (1) failed to adequately investigate and prepare a defense; (2) conducted untimely discovery; and (3) failed to adequately challenge

the prosecution's case in that counsel stipulated to the chemical analysis and chain of custody.

■■ With regard to defendant's attorney's alleged failure to investigate and prepare a defense, Lopez points out that no witnesses were called in his defense. Lopez contends that counsel should have called witnesses, including Lopez, to explain why Lopez was at McDonald's and why there was an exchange of money.

Whether a failure to investigate is incompetence depends upon the value of the evidence and the closeness of the case. (*People v. Jarnagan* (1987), 154 Ill. App. 3d 187, 194, 506 N.E.2d 715, 721.) Defendant does not identify any witnesses who should have been called to testify but were not. Furthermore, defendant has not indicated how his own truthful testimony would have differed from any of the evidence presented at trial. Although no witnesses testified for the defendant and defendant did not take the stand, counsel is not required to manufacture a defense where none exists. (*People v. Holman* (1983), 115 Ill. App. 3d 60, 65, 450 N.E.2d 432, 435.) There is a presumption that the challenged action of counsel was the result of sound trial strategy and not of incompetence. *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065; *People v. Barrow* (1989), 133 Ill. 2d 226, 549 N.E.2d 240.

■■ Defendant further argues that trial counsel was ineffective for waiting until five days prior to trial to file a request for discovery. Lopez' attorney interviewed the State's key witness, Sheppard, seven months prior to trial and again on the eve of trial. Lopez argues that waiting until the eve of trial to interview the witness was prejudicial. The record of proceedings demonstrates that defendant's counsel brought out discrepancies and inconsistencies during cross-examination of Sheppard. Trial counsel also impeached Sheppard's testimony with prior inconsistent statements which Sheppard made to the police. It is undisputed that defendant's counsel conducted discovery and interviewed the State's key witness. Defendant has not shown how he was prejudiced by counsel's alleged lack of diligence.

Finally, defendant argues that trial counsel's ineffectiveness is shown by his stipulation to the chemical analysis of the drugs and also to the chain of custody. Defendant argues that because Sheppard did not initially tell the police that he received two ounces of cocaine from Lopez, there may have been only one ounce. Defendant maintains that assuming Sheppard received only one ounce of cocaine and it was flushed down the toilet as Sheppard testified, the State could not meet its burden of proof. Defendant contends

that because counsel stipulated to the chain of custody and the substance as being cocaine, no meaningful challenge to the prosecution occurred. We disagree.

■ Defendant's trial counsel did not stipulate that the ounce of cocaine produced by the State came from the defendant. Counsel's only stipulation was that the substance produced by the State at trial was cocaine. Counsel also stipulated to the chain of custody. Therefore, the only question raised by the defendant's argument is whether the substance produced by the State was the same ounce that Sheppard testified he received from the defendant. Counsel did not stipulate that it was, hence the defendant's argument is meritless.

We conclude that the allegations which Lopez submits as the foundation for his claim of ineffective assistance of counsel did not operate to his prejudice. We conclude that defendant received effective representation.

For the above reasons, the judgment of the trial court is affirmed.

Affirmed.

GOLDENHERSH and LEWIS, JJ., concur.