NOTICE

Decision filed 06/24/08. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-06-0639

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the
                                     ) Circuit Court of
    Plaintiff-Appellee,                   ) St. Clair County.
                                       )
v.                                            ) No. 06-CF-877
                                       )
DEAN RIGSBY,                        ) Honorable
                                       ) John Baricevic,
    Defendant-Appellant.           ) Judge, presiding.

_____

JUSTICE WELCH delivered the opinion of the court:

After a jury trial, the defendant, Dean Rigsby, was found guilty of driving under the influence of alcohol with a blood-alcohol content of .08 or more (625 ILCS 5/11-501(a)(1) (West 2004)). On appeal, the defendant argues that the State failed to prove him guilty beyond a reasonable doubt because the State failed to prove that the breath-analysis instrument was properly certified before and after the defendant's breath test.

BACKGROUND

On May 25, 2006, the defendant was arrested by Officer Robert Boehm of the Lebanon police department for driving under the influence of alcohol with a blood-alcohol content of .08 or more. In the amended criminal information, dated July 7, 2006, the defendant was charged with aggravated driving under the influence in violation of section 11-501(a)(1) of the Illinois Vehicle Code (625 ILCS 5/11-501(a)(1) (West 2004)). A jury trial was held on October 9, 2006, in which the following evidence was produced.

Officer Boehm, the only witness, testified that at approximately 1:45 p.m., a motorist alerted him to a red pickup truck on the side of the road with a white male slumped over the

1

steering wheel. When Boehm arrived, he found the pickup truck still running and the defendant slumped over the steering wheel, unconscious, with his foot on the brake. The officer also testified that he saw two open beer cans in the bed of the truck and one open beer can on the truck's floorboard. Boehm unsuccessfully attempted to wake the defendant and then called for an ambulance. Before the ambulance arrived, the defendant woke momentarily, asked Boehm for a kiss, and said "Alikazam" before passing out again. The paramedics arrived, examined the defendant, and told Boehm they believed that the defendant was intoxicated and that he did not need to go to the hospital. Boehm testified he noticed that the defendant's eyes were red and glassy and that the defendant's speech was slurred and very thick-tongued. He also testified that the defendant smelled strongly of alcohol and that the defendant was unable to perform a field sobriety test because the defendant was unable to stand and maintain consciousness. Boehm assisted the defendant to the police car and transported him to the Lebanon police department.

Boehm testified that on May 25, 2006, he was certified and licenced by the State of Illinois to operate the EC-IR instrument, a machine that measures a person's blood-alcohol content. He also testified that Clyde Matthews certified the machine on April 12, 2006. Boehm observed the defendant for 20 minutes and then administered a breath test to the defendant, after doing a blank check on the machine. "People's Exhibit No. 1" was the EC-IR instrument printout of the defendant's breath-test results. Boehm identified the printout as being from the defendant's test, explained the blank-check reading, and testified that the printout indicated that the defendant's blood alcohol was .276, more than three times the legal limit of .08. Boehm testified that he recorded the results of the defendant's breath test in the breath-analysis instrument logbook. The defendant did not object to this testimony.

On cross-examination, the defendant showed Boehm "Defendant's Exhibit No. 1," a photocopy of two pages of the breath-analysis instrument logbook, the first sheet dated

March 9, 2006, to May 25, 2006 (first logsheet), and the second sheet dated April 19, 2006, to May 25, 2006 (second logsheet). Boehm testified that the entries are normally made in chronological order and that the defendant's test was recorded on the last line of the first logsheet. The entry above the defendant's in the logbook, also dated May 25, 2006, was by Clyde Matthews, but it was crossed out. The second logsheet had an entry on May 25, 2006, by Clyde Matthews indicating that the machine had been certified on that date, and this entry was not crossed out. Boehm testified that the time was not recorded in the logbook indicating when Matthews performed the certification check on May 25, 2006. Boehm also stated that he had brought the entire logbook with him to the trial.

After the redirect examination of Boehm, the State moved to introduce "People's Exhibit No. 1," the printout showing the defendant's breath-test blood-alcohol content of .276. The court asked the defendant if there was any objection, and he said no. The court admitted the breath-test results without objection.

The jury found the defendant guilty of driving under the influence. The defendant was sentenced to 180 days in jail, with 177 days credited for time served, and 2½ years of probation.

ANALYSIS

On appeal, the defendant argues that the State failed to prove him guilty beyond a reasonable doubt because the State failed to prove that the EC-IR instrument had been properly certified for accuracy by the Department of State Police, as required by 20 Ill. Adm. Code §1286.200 (eff. June 30, 2004).

Under section 11-501.2(a) of the Illinois Vehicle Code (Code), "evidence of the concentration of alcohol *** in a person's blood or breath at the time alleged, as determined by analysis of the person's blood, urine, breath[,] or other bodily substance, shall be admissible." 625 ILCS 5/11-501.2(a) (West 2004). This section of the Code then authorizes

3

the Director of State Police to approve satisfactory techniques or methods to certify the accuracy of breath-testing equipment. 625 ILCS 5/11-501.2(a)(1) (West 2004). Under the regulation promulgated by the Department of State Police, a rebuttable presumption that the breath-testing instrument was accurate arises if the following four conditions are met: (1) the breath-analysis instrument was approved, (2) the accuracy check prior to the defendant's test was within the accuracy tolerance, (3) no accuracy check was performed after the defendant's test or an accuracy check was performed after the defendant's test and it was within the accuracy tolerance, and (4) the defendant's test occurred not more than 62 days after the last accuracy check. 20 Ill. Adm. Code §1286.200 (eff. June 30, 2004). According to the defendant, the State failed to prove the third requirement when it did not introduce evidence that the EC-IR machine was tested after May 25, 2006, or evidence that the machine had not been tested since May 25, 2006. In his argument, the defendant assumes that the EC-IR instrument was tested before the defendant took his breath test on May 25, 2006. The defendant argues that because the State failed to present evidence that the EC-IR machine either was not subsequently tested or was tested and found accurate, the State failed in its burden of proof beyond a reasonable doubt. We disagree.

The State has an obligation to prove every essential element of the crime beyond a reasonable doubt. *People v. Maggette*, 195 Ill. 2d 336, 353 (2001); *People v. Hess*, 24 Ill. App. 3d 299, 303 (1974). The elements of the crime with which the defendant was charged are (1) driving or being in actual physical control of any vehicle and (2) an alcohol concentration in the person's blood or breath of .08 or more. 625 ILCS 5/11-501(a)(1) (West 2006). The jury instructions given in this case, which lay out the elements of the crime, are as follows: "[A] person commits the offense of driving with an alcohol concentration of 0.08 or more when he is in actual physical control of a vehicle while the alcohol concentration in such a person's blood or breath is 0.08 or more." See Illinois Pattern Jury Instructions,

4

Criminal, No. 23.20 (4th ed. 2000).

Proving that the breath-test examination was performed according to the Department of State Police standards is not an element of the offense of driving under the influence but is instead a foundational requirement for the admission of the breath-test results. *People v. Black*, 84 Ill. App. 3d 1050, 1052 (1980) (evidence that the machine was regularly tested for accuracy is among the elements of the foundation required for the admission of breath-test results); *People v. Hester*, 88 Ill. App. 3d 391, 393 (1980) (before breath-test results may be received into evidence, a proper foundation must be established); *People v. Orth*, 124 Ill. 2d 326, 340 (1988) (the required foundation for the admissibility of breath-test results includes, among other things, evidence that the machine was tested regularly for accuracy and was working properly). The State's failure to lay a proper foundation goes to the admissibility of the breath-test results, not to the sufficiency of the evidence. *People v. DeLuna*, 334 Ill. App. 3d 1, 20 (2002). Once the results of the breath test showing the defendant's alcohol content of .27 was admitted into evidence, there was sufficient evidence before the jury for it to find him guilty beyond a reasonable doubt, even if the evidence was improperly admitted.

The defendant's argument in the case at bar is similar to that made by the defendant in *DeLuna*, 334 Ill. App. 3d at 20. In *DeLuna*, the defendant argued that the State failed to prove him guilty beyond a reasonable doubt because the State failed to lay a proper foundation for the expert opinion of Dr. Kruski that the evidence seized was cocaine. As the court explained in *DeLuna*:

"[D]efendant's contention as to proper foundation is an attack going to the admissibility of the evidence presented in Dr. Kruski's opinion, not to its sufficiency. Arguably, sufficiency involves absence of proof of a basic element of the crime. Defendant here is not challenging the lack of proof as to the existence of an element of the crime, since Dr. Kruski testified to the identity of the controlled substance. The

5

challenge is to the failure to lay a proper foundation for the proof of that element. This goes to a determination of its admissibility, rather than sufficiency of the evidence presented." *DeLuna*, 334 Ill. App. 3d at 20.

The same is true in the case at bar. The defendant's argument goes to the admissibility of the evidence, not the sufficiency.

In *DeLuna*, the court found that the defendant had waived any objection to the admission of the evidence because the defendant failed to object during the trial. *DeLuna*, 334 Ill. App. 3d at 19. That court stated that an objection requirement is especially important in cases of an improper foundation because errors in laying a foundation are easily cured. *DeLuna*, 334 Ill. App. 3d at 21.

In the instant case, on his cross-examination of Officer Boehm, the defendant exposed what he argues was the State's improper foundation, by introducing into evidence a copy of the breath-analysis instrument log. The defendant then failed to object when the State moved to introduce the results of the breath test on redirect examination. This failure to object waived the issue of an improper foundation on appeal.

The defendant moved for a directed verdict after the close of the State's case. The motion for a directed verdict does not preserve the issue of an improper foundation because it was not a timely and specific objection to the foundation requirements. See *People v. Sparks*, 335 Ill. App. 3d 249, 254 (2002) ("[a] timely objection in the trial court as to the foundation of technical evidence is necessary to give the State the opportunity to correct any deficiency in the proof"); *People v. Bynum*, 257 Ill. App. 3d 502, 514-15 (1994). The motion for a directed verdict also deprived the State of the opportunity to correct any foundational deficiencies because it was made after the close of the State's case. Also, had a timely objection been made, the foundational problems could have been cured, because Officer Boehm brought with him to the trial the entire breath-analysis log, which would have

6

contained any information about subsequent accuracy checks.

The exceptions to the waiver rule also do not apply. Exceptions to the waiver rule are made " 'where the allegation of error would not normally be expected to be included in a [*sic*] post[]trial motion' " or where " 'the reviewing court elects to take notice of plain errors affecting substantial rights pursuant to Supreme Court Rule 615(a).' " *DeLuna*, 334 Ill. App. 3d at 19-20 (quoting *People v. Lopez*, 242 Ill. App. 3d 160, 162 (1993)); 134 Ill. 2d R. 615(a). The allegation of error in the case at bar would normally be expected to be made in a posttrial motion. See *DeLuna*, 334 Ill. App. 3d at 20 (foundational error was expected to be raised in a posttrial motion). The defendant also cannot make a case under the second prong of the waiver rule because foundational issues go to the admissibility of the evidence, not to the sufficiency of the evidence. *DeLuna*, 334 Ill. App. 3d at 20. Accordingly, any error does not affect the defendant's substantial rights and the error is waived.

## CONCLUSION

The foundational issues were waived by the defendant, and the State met its burden of proof on each element of driving under the influence of alcohol. The judgment of the circuit court of St. Clair County is hereby affirmed.


Affirmed.


GOLDENHERSH, J., concurs.


JUSTICE CHAPMAN, dissenting:

I dissent from the majority's opinion.

I do not conclude that defense counsel waived her client's right to complain that there was a lack of foundation supporting the breath-alcohol evidence utilized in the defendant's

7

conviction. There was no doubt that the defense argued the matter of foundation from the beginning of the trial. The majority is correct that when the State sought to introduce the breath-alcohol test result in issue, defense counsel did not object to its introduction. However, I believe that given the number of other times before, during, and after the trial that the foundation issue was raised by defense counsel, the foundation issue was preserved. I also note that the State does not argue that the defendant waived the issue.

Prior to the trial, counsel for the defendant sought discovery of the necessary foundational documents from the State. Those requests were dated July 10, 2006, and September 18, 2006. By a pretrial motion *in limine*, the defendant asked the court to bar the State's use of the breath-test results for the State's failure to produce them in discovery before the trial. The prosecutor replied and indicated that he did not believe he needed the logbook, to which the trial judge pressed him on whether or not he had sufficient foundational evidence. The prosecutor had no documentation in his file, and he had to leave the courtroom to contact the police department. The logbook pages utilized at the trial were the ones that the Lebanon police department faxed to the prosecutor. The trial court indicated that a ruling would be forthcoming, but the record and the minute entries reflect no such order. During cross-examination, a Lebanon police officer admitted that he did not know if the May 25, 2006, certification check had been performed before or after the defendant's test. The State had the officer on the stand, and in possession of the logbook, and did not seek to clarify the matter by documenting any certification done after the date of the defendant's test. The majority's contention that the defense "sandbagged" the State by waiting to raise the foundational failures until counsel filed a motion for a directed verdict is factually incorrect. Any further questioning on the part of the defense counsel about prior or subsequent certification checks would have been contrary to the position of her client. It was up to the State to verify the existence and timing of these recertification checks, and there is no reason

8

that the State could not have done so on direct and/or on redirect. While her motion for a directed verdict at the close of the State's case did involve this missing element, there should have been no doubt from the motions filed before the trial, and her questioning during the trial, what argument defense counsel was making. Furthermore, the missing element is a key foundational component to the most important piece of evidence used against the defendant in this case. Her argument by a motion for a directed verdict should not have been a surprise to the State.

Despite defense counsel's failure to object to the admission of the breath-test document, from the entirety of the motions, arguments, and cross-examination, I would not conclude that the defendant waived his right to object to the lack of foundation.

I would also like to comment on this foundational requirement to stress its importance to the crime with which the defendant was charged.

The use of breath-alcohol-testing instruments is fairly complicated, in that only certain instruments are authorized by the federal and state governments to be used for the detection of blood-alcohol content, only highly trained individuals can operate the instruments, and the instruments require frequent tests to ensure their reliability. See 20 Ill. Adm. Code §1286.210 (eff. June 30, 2004) (containing the list of approved breath-alcohol instruments–instruments that have been the subject of rigorous testing); 20 Ill. Adm. Code §1286.230 (eff. June 30, 2004) (the accuracy or certification checks that must be performed no more than every 62 days); 20 Ill. Adm. Code §1286.70 (eff. June 30, 2004) (the rule regarding the maintenance of records relative to the tests performed by defendants, the accuracy tests, and any service records); 20 Ill. Adm. Code §1286.100 (eff. June 30, 2004) (the licensure requirements for all breath-alcohol-instrument operators). Additionally, in order for evidence of the blood concentration of alcohol to be admissible, the testing must have been performed in keeping with "standards promulgated by the Department of State

9

Police" and by a person possessing a permit issued by the Department of State Police for purposes of testing blood-alcohol content. 625 ILCS 5/11-501.2(a)(1) (West 2004). The Department of State Police is authorized by statute to "certify the accuracy of breath[-]testing equipment" and to "prescribe regulations as necessary" relative to training and to ensure the accuracy of the instruments. 625 ILCS 5/11-501.2(a)(1) (West 2004).

At issue in this case was one portion of the regulation that included the following requirement:

"No accuracy check has been performed subsequent to the subject test[,] or the performance of the instrument on the next accuracy check after the subject test was within the accuracy tolerance described in this Subpart." 20 Ill. Adm. Code §1286.200(c) (eff. June 30, 2004).

If the regulatory "no test" language is literally construed, as the State urges, that interpretation produces what I find to be an "absurd result." See *People v. Hanna*, 207 Ill. 2d 486, 498, 800 N.E.2d 1201, 1207 (2003). When an interpretation of the wording of a statute utilizing the plain-meaning rule would lead to an "absurd" result, then the plain-meaning rule need not be followed. *Hanna*, 207 Ill. 2d at 498, 800 N.E.2d at 1207-08.

The purpose of the certification tests is to ensure that the instrument is properly functioning, thereby ensuring result accuracy. The language of this regulation mandates that any subsequent certification check be within the allowable range. This, too, serves to establish that the instrument continues to function properly. By inference, if the certification tests performed before and after a defendant's test yield results within the accepted deviation values (and the department was using an approved instrument and the certification tests were completed every 62 days or less), then as the regulation states, "[a] rebuttable presumption exists that an instrument was accurate at the particular time a subject test was performed" (20 Ill. Adm. Code §1286.200 (eff. June 30, 2004)). I would conclude that the "no test" language

10

does not allow the State to simply neglect to introduce its evidence relative to the next certification check.

In this case, the trial did not occur until some months after the 62 days following the defendant's test. So, there necessarily would have been another accuracy test after the defendant's test. The final entries of both of the logbook sheets introduced into evidence relative to the breath-alcohol-testing instrument used by the Lebanon police department coincidentally ended on May 25, 2006. The next pages of these logbooks were not introduced, and there was no testimony about a certification check conducted after May 25, 2006.

Furthermore, to accept the State's theory that "no test" means that the departments were not required to test the instrument for accuracy at any time after the defendant's test, the evidence at the trial certainly did not prove that no test had occurred. From entries (one finalized and one crossed out) on the two logbook sheets introduced into evidence, there was an accuracy check performed on the same date that the defendant's test was performed–May 25, 2006. We do not doubt that this May 25, 2006, test was designed to be the next accuracy check after the April 12, 2006, accuracy test. The State could have taken the position that this May 25, 2006, test was performed before the defendant's test (earlier in the day)–eliminating the need to prove up the April 12, 2006, test. Or the State could have taken the position that this May 25, 2006, test was performed after the defendant's test, which would have effectively satisfied the third requirement of the administrative regulation on accuracy. The State chose to take neither position. In response to a defense motion for a directed verdict during the trial referencing the State's failure to establish if the May 25, 2006, accuracy check had been performed before or after the defendant's test, the prosecutor said:

"We did not elicit testimony that the certification happened on the day of this arrest.

11

We elicited testimony that it happened 43 days earlier, which is within the time frame allowable by law."

From this argument I believe that the prosecutor missed the point of the requirement. Obviously, had the Illinois State Police employee who performed the accuracy check on May 25, 2006–again, Clyde Matthews–listed the time of the test, the handling of this evidence would likely have been different. From a look at the two logbook sheets in evidence, it would appear that Clyde Matthews did not ever record the time of his certification checks–just the date and the results. The April 2006 accuracy check results also contained no listed time for the checks. The prosecution took the position that by proving up the April 12, 2006, accuracy check, the State's required evidence regarding the reliability of the test result in question was complete. About this, I contend that the State was wrong.

The more specific manner in which the State charged the defendant with driving under the influence of alcohol necessitated the admission of breath-alcohol test results. See 625 ILCS 5/11-501(a)(1) (West 2004). Because the State failed to prove the foundational element necessary to establish the accuracy of the defendant's May 25, 2006, breath-alcohol test and because a breath-alcohol test at or above .08 was a required element of the crime with which the defendant was charged, I believe that the State failed to prove the defendant guilty of the crime beyond a reasonable doubt.

I also find that the majority's reliance upon *People v. DeLuna*, 334 Ill. App. 3d 1, 777 N.E.2d 581 (2002), is misplaced because it is factually distinguishable. In *DeLuna*, because the expert witness had already testified that the substance at issue was, in fact, cocaine, the defendant's argument was not that the substance was something other than cocaine but that the State had not established that the expert's testimony was of the type reasonably relied upon in the industry and/or that the machines utilized in analyzing the chemical content were properly functioning. *DeLuna*, 334 Ill. App. 3d at 19, 777 N.E.2d at 597-98. With breath-

12

alcohol tests, administrative regulations mandate testimony about the accuracy checks completed on the machine utilized–checks completed both before and after the subject test and within a certain time frame. Compliance with an administrative regulation was not at issue in *DeLuna*. Also, as the court in *DeLuna* indicated, "sufficiency involves absence of proof of a basic element of the crime," and that was not at issue in *DeLuna* because the expert testified that the substance was, in fact, cocaine. *DeLuna*, 334 Ill. App. 3d at 20, 777 N.E.2d at 598. In this case, what was at issue was the level of alcohol within the defendant's system as quantified by a breath-alcohol test–not the mere presence of alcohol. Unlike cocaine, which is illegal in any quantity, it is not a crime to have a blood-alcohol level less than .08 as long as it does not impair one's driving abilities. Without proper testimony about the device's history of accurate reporting, the proof fails. This situation involves the admissibility of the result–not just the sufficiency of the evidence. For that reason, the majority's reliance upon *DeLuna* is inappropriate.

For the reasons stated herein, I respectfully dissent.

NO. 5-06-0639

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 06-CF-877 |
| | ) | |
| DEAN RIGSBY, | ) | Honorable |
| | ) | John Baricevic, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

**Opinion Filed**:     June 24, 2008

_____

**Justices**:     Honorable Thomas M. Welch, J.

Honorable Richard P. Goldenhersh, J.,
Concurs
Honorable Melissa A. Chapman, J.,
Dissents

_____

| | |
|---|---|
| **Attorneys for Appellant** | Daniel M. Kirwan, Deputy Defender, Larry R. Wells, Assistant Defender, Office of the State Appellate Defender, Fifth Judicial District, 117 North Tenth Street, Suite #300, Mt. Vernon, IL 62864 |

_____

| | |
|---|---|
| **Attorneys for Appellee** | Hon. Robert Haida, State's Attorney, St. Clair County, 10 Public Square, Belleville, IL 62220; Norbert J. Goetten, Director, Stephen E. Norris, Deputy Director, Sharon Shanahan, Contract Attorney, Office of the State's Attorneys Appellate Prosecutor, 730 E. Illinois Highway 15, Suite 2, P.O. Box 2249, Mt. Vernon, IL 62864 |

_____