THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EDUARDO DeLUNA, Defendant-Appellant.

First District (1st Division)   No. 1—97—2495

Opinion filed September 23, 2002.—Rehearing denied October 21, 2002.

Michael J. Pelletier and Elizabeth Botti, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, John E. Nowak, and Daniel E. Maloney, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GORDON delivered the opinion of the court:

Following a bench trial, defendant Eduardo DeLuna (defendant)

was convicted of two counts of possession of a controlled substance with intent to deliver and sentenced to 18 years in prison. He makes four contentions on appeal: (1) the trial court erred in denying his motion to quash arrest and suppress evidence; (2) his trial counsel's failure to move to suppress evidence seized from a car amounted to ineffective assistance; (3) he was not proven guilty beyond a reasonable doubt because the State failed to establish a proper foundation for the opinion given by the forensic chemist; and (4) he was not proven guilty beyond a reasonable doubt due to the State's failure to prove a continuous chain of custody of the evidence. Defendant asks that we reverse his conviction outright or, alternatively, reverse and remand the cause for a new trial. For the following reasons, we affirm.

## BACKGROUND

Defendant's trial counsel filed a pretrial motion to quash defendant's arrest and suppress evidence of cocaine found on defendant's person. The following was adduced from that hearing.

Officer Glen Lewellen testified that at 6:15 p.m. on September 22, 1994, he, along with Officers Walter Smith and Thomas Horton, was executing a search for drugs in the second-floor apartment of Jack Willison at 5727 South Kenton, pursuant to a warrant. Around that time, Officer Lewellen received a radio call that a vehicle driven by a male Hispanic had pulled up to the apartment building. Officer Lewellen went to the back bedroom of the apartment, looked out the window, and from 25 to 30 feet away, saw defendant exit a red, two-door 1988 Oldsmobile in the building's parking lot. Defendant had nothing in his hands. Officer Lewellen saw him reach into the rear of the car on the driver's side and emerge with a gray "brick-size kilo-type package" in his hands. Defendant lifted his shirt, put the package in the waistband of his pants, and placed his shirt over the package to conceal it. Officer Lewellen testified that he had seen "at least a thousand kilos of that type of packaging" before and, based on his experience, he believed it to be suspected cocaine. He also stated that he did not see a gun in defendant's possession. Defendant then walked away from the car and toward the building's entrance.

Officer Lewellen further testified that about 30 seconds later, defendant knocked on the door of the apartment he and his fellow officers were searching. After one of the other officers opened the apartment door, Officer Lewellen conducted a pat-down search of defendant in the hallway. Officer Lewellen recovered a gray brick package, which he described as 2 to 3 inches thick, 8 to 12 inches long, and 2 to 3 inches wide. He testified that he poked a hole in the package to check its contents, whereupon he confirmed that it contained suspected

cocaine. Defendant was then arrested and the officers brought him downstairs to the parking lot.

Officer Lewellen testified that he approached the red, two-door 1988 Oldsmobile and looked inside, but did not see any contraband from his vantage point. He opened the driver's side door and saw a panel behind the seat that was somewhat ajar. Inside that panel, he recovered another gray brick package, a .25-caliber firearm with five live rounds, a scale and plastic bags. Officer Lewellen then noticed that there was another panel in the rear passenger side of the car; that panel was locked. Upon opening it, he found a large clear plastic bag containing a white chunky substance, five smaller bags containing a white substance and $4,370 in cash.

In deciding whether to grant defendant's motion to quash his arrest and suppress the evidence found on his person, the court found that there were "reasonable articuable [sic] facts" for the pat-down search based both on case law and "plain view"—Officer Lewellen's observations and the fact that defendant arrived at an apartment in the midst of being searched for drugs pursuant to a warrant. The court went on to also discuss the evidence found in the car and stated that it did not "see sufficient facts here" to justify the search and the officers' failure to obtain a warrant. It commented that it would consider suppressing this evidence because it did not "know of any exception to the search warrant that would have allowed them to search that vehicle."

At a subsequent hearing date, defense counsel pointed out to the court that the motion to suppress was limited to the evidence found on defendant's person and did not cover what was found in the car. The court recognized its confusion and, though it now believed the search of the car was proper, stated that its reference to the car was "really a moot point because [defendant was] not really raising that argument." Accordingly, it denied the motion to quash defendant's arrest and suppress the evidence found on his person.

The cause then proceeded to trial. Officer Lewellen testified much in the same manner as he did at the pretrial hearing. He again stated that in his 10 years of experience, he had seen these types of brick packages many times before and that they were suspected cocaine. He also testified that while he did not see defendant with a gun outside the apartment building, he conducted the pat-down search for "safety" reasons. He felt a bulge in defendant's waistband, removed the brick package, and continued the "protective pat-down search" of defendant. In addition to the brick package, he found a pager and a set of keys on defendant's person and used these keys to open the car in the parking lot. He and Officer Smith, who was able to pop open the locked panel

in the passenger side of the car, gave all the evidence retrieved from both defendant's person and the car to Officer Horton, who inventoried it and brought it back to the police station.

Officer Horton corroborated much of Officer Lewellen's testimony. While executing the search warrant at the apartment, he heard defendant knock on the door. He opened the door and Officer Lewellen conducted a pat-down search of defendant. Officer Horton took the gray brick package Officer Lewellen found in defendant's waistband, put it in an evidence bag, sealed it and labeled it with defendant's name. Officer Horton at first testified that he did not field test the contents of the package and that he did not puncture its wrapping. He later testified that, while he did not poke a hole in the brick, he may have looked inside it by lifting the wrapping. After the search of the car was completed, he brought all the evidence back to the police station, inventoried it, and weighed the brick packages with their wrapping. He then recorded their weights on inventory sheets: the package found on defendant's person weighed 1,084 grams and the package found in the car weighed 1,743 grams. Officer Horton sealed all the evidence bags and put them in the crime lab's vault. When asked if all the evidence he collected at the scene was present at trial, Officer Horton noted that while the two cocaine brick packages, gun, clip, bullets, money and plastic bags were there, the scale, pager and other plastic bags were not.

Dr. Arthur Kruski, the forensic chemist who tested the brick packages, also testified. The parties stipulated that he was an expert in the analysis of controlled substances. Dr. Kruski stated that he first tested the package found on defendant's person. Though he could not remember who gave him the evidence bag from the secured, locked lab vault, he did notice that the bag was sealed. He also verified the contents and the evidence numbers according to the attached inventory sheets. Dr. Kruski testified that the brick package was completely sealed; it had not been punctured or opened. He stated that the package's dimensions were 8 to 9 inches wide by 8 to 9 inches long by 1 to 1½ inches thick. He then described how he weighed the evidence. He removed the gray duct tape and plastic wrappings from the package and placed it on a scale that he has used thousands of times and is periodically calibrated. Defense counsel stipulated that the scale is in good repair. Without the wrappings, the package weighed 983 grams. Dr. Kruski then performed five preliminary tests on the package and described each one. Three of these tests positively indicated the presence of cocaine. Dr. Kruski also performed a definitive confirmative test: a gas chromatography mass spectrometer (GCMS) test. He testified that the GCMS machine was "daily tuned." This test too indicated

the presence of cocaine. Dr. Kruski testified that he also ran blank GCMS tests to corroborate these results. Based on all this, Dr. Kruski opined that the brick package found in defendant's waistband contained cocaine.

Dr. Kruski further testified that he followed this same procedure when later testing the brick package retrieved from the car. Again, the evidence bag containing the package was sealed and Dr. Kruski verified its contents with the inventory sheets. He removed the package's wrapping and, along with the five plastic bags of white powder, weighed them for a total of 1,629.7 grams. He then performed the same five preliminary tests on the package and each of the plastic bags, and the results were the same. He also performed the GCMS test on these items and obtained the same result. Again, Dr. Kruski testified that, based on all this, it was his opinion that the brick package and the plastic bags from the car all contained cocaine.

Defense counsel moved for a directed finding, arguing that the State had failed to prove a sufficient chain of custody for the evidence due to the discrepancies in the weight of the brick packages and that it failed to provide a proper foundation for Dr. Kruski's opinions because it had not shown the "scientific efficacy" of the GCMS machine. The court denied the motion.

As the trial continued and defense counsel presented its case in chief, it questioned Officer Lewellen as to some discrepancies in his trial and pretrial testimony. Specifically, Officer Lewellen was asked about his testimony regarding the dimensions of the brick package he recovered from defendant's person in relation to that of Dr. Kruski, who had testified about the package's size while the evidence was in court. In explaining the size discrepancy, Officer Lewellen stated that he had been testifying as to the package's approximate size, and because he did not have the package in front of him when he so testified, he had erred. Moreover, defense counsel asked him about his prior testimony that he had poked a hole in the package he retrieved from defendant's person during the pat-down search, while Dr. Kruski had testified that the package was completely sealed when he received it for testing. Officer Lewellen stated that he had not poked a hole in the package but he believed Officer Horton had done so.

Finally, defendant testified on his own behalf. He stated that he went to the apartment that day because he was considering renting it from Willison. He testified that he arrived in the neighborhood by means of public transportation and then walked the rest of the way to the apartment building. He rang the doorbell, was let inside and went up to the second floor. Defendant testified that police officers opened the apartment door, forcefully dragged him inside, handcuffed him,

placed him in a choke hold and searched him. He further testified that the officers then put him in a squad car and took him to the station. He insisted that he did not have a brick package in his waistband or cocaine anywhere on his person; the officers took his pager, wallet and two sets of keys from his pants. He also testified that the red, two-door 1988 Oldsmobile in the parking lot was not his and that he was taken away before it was searched.

At the conclusion of trial, the court found, based on the evidence and its observation of the witnesses, that the State had proven defendant guilty beyond a reasonable doubt of two counts of possession of a controlled substance with intent to deliver. It noted that it was considering both quantities: the amount found on defendant's person and that found in the car, of which it believed defendant had constructive possession. It sentenced defendant to 18 years in prison.

## ANALYSIS

As noted, defendant presents four arguments on appeal in support of his contention that reversal or a new trial is warranted. We address each separately.

### A. Motion to Quash Arrest and Suppress Evidence

Defendant's first contention is that the trial court erred in denying his motion to quash arrest and suppress the evidence found on his person for two reasons: first, the pat-down search violated his fourth and fourteenth amendment rights because Officer Lewellen was searching for drugs rather than weapons, and second, Officer Lewellen lacked probable cause to believe that the package he seized from defendant's waistband was contraband. Because of this, defendant argues that we must reverse his conviction outright. We disagree.

### 1. Standard of Review

As a threshold matter, we note that both parties insist that our review of this issue must be on a *de novo* basis. Defendant's reasoning for this is that neither the facts nor the witnesses' credibility is being challenged. The State, meanwhile, bases its reasoning on case law which states that determinations of probable cause and reasonable suspicion merit *de novo* review. We, however, cannot agree completely with either party.

In a very real sense, defendant *is* challenging the facts of this case and the credibility of the witnesses—namely, Officer Lewellen. The first part of his argument regarding the pat-down search is that Officer Lewellen was searching for drugs instead of weapons, making the search invalid. A determination of this must come from the record and the facts presented to the trial court through, principally, the

testimony of Officer Lewellen. When a court's ruling on a motion to suppress involves factual determinations and assessments of credibility, we may not disturb the ultimate ruling unless it was manifestly erroneous. See *People v. Sorenson*, 196 Ill. 2d 425, 430-31 (2001) (this is because trial court is in best position to observe witnesses and weigh credibility); *People v. Williams*, 181 Ill. 2d 297, 309 (1998) (generally, ruling on motion to suppress is subject to reversal only if manifest error exists); *People v. Sweborg*, 293 Ill. App. 3d 298, 301-02 (1997) (when factual matters, from which more than one inference may be drawn, become issues in cause, trial court's determination merits deference and should not be disturbed absent manifest error).

However, the second part of defendant's argument is a challenge to probable cause: did Officer Lewellen have probable cause, upon seeing and/or feeling the package, to believe it was contraband, thereby allowing him to seize it from defendant's waistband? Recently, our courts declared that when a motion to suppress ultimately turns on questions of reasonable suspicion and probable cause, we must apply a *de novo* standard of review. See *Sorenson*, 196 Ill. 2d at 431 (adopting *Ornelas v. United States*, 517 U.S. 690, 699, 134 L. Ed. 2d 911, 920, 116 S. Ct. 1657, 1663 (1996), which held that *de novo* review is required for determinations of probable cause or reasonable suspicion involved in motion to suppress); see also *People v. DeSantis*, 319 Ill. App. 3d 795, 802 (2000) (same); *People v. Rush*, 319 Ill. App. 3d 34, 38 (2001) (these determinations require the different standard of review found in *Ornelas*).

Therefore, we cannot agree with the parties' conclusion that only a *de novo* review should occur here. Instead, our review must be composed of two parts. See *Rush*, 319 Ill. App. 3d at 38. First, "we will accord great deference to the trial court's factual findings, and we will reverse those findings only if they are against the manifest weight of the evidence; however, we will review *de novo* the ultimate question of the defendant's legal challenge to the denial of his motion to suppress." *Sorenson*, 196 Ill. 2d at 431; see also *Rush*, 319 Ill. App. 3d at 38-39.

## 2. The Pat-Down Search

Defendant's first assignment of error in the trial court's decision to deny his motion to quash arrest and suppress the evidence found on his person is that Officer Lewellen searched him to find drugs, not weapons, and thus violated the provisions of *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), and his fourth and fourteenth amendment rights.

■ *Terry* created an exception to the general rule that warrantless

searches are unreasonable, and allows a police officer to stop an individual when his observations create a reasonable suspicion that the individual has committed or is about to commit a crime. See *People v. Blake*, 268 Ill. App. 3d 737, 739 (1995); see also *People v. Rivera*, 272 Ill. App. 3d 502, 504 (1995), quoting *Terry*, 392 U.S. at 21, 20 L. Ed. 2d at 906, 88 S. Ct. at 1880 (officer " 'must be able to point to specific and articulable facts' ").[1] The officer may then frisk, or pat-down, the individual, but only if he reasonably believes the individual is armed and dangerous; the search must be limited to a search for weapons, nothing more. See *People v. Cox*, 295 Ill. App. 3d 666, 673 (1998); *Blake*, 268 Ill. App. 3d at 739. The officer does not need to be completely certain that the individual is armed to conduct the pat-down search. See *Sorenson*, 196 Ill. 2d at 433. Rather, he must simply have a reasonable fear for his safety or that of others. See *Rivera*, 272 Ill. App. 3d at 505. In determining if the officer's fear was reasonable in the midst of the circumstances presented, "due weight must be given to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Sorenson*, 196 Ill. 2d at 433. While an objective standard is generally used, this evaluation is based upon the totality of the circumstances and therefore includes, as one factor, evidence of the officer's subjective feelings regarding his safety. See *Cox*, 295 Ill. App. 3d at 673-74. The burden of proof rests with defendant to prove that the pat-down search was unlawful. See *Rivera*, 272 Ill. App. 3d at 504.

Defendant here bases his contention that Officer Lewellen was searching for drugs rather than weapons during the pat-down on Officer Lewellen's failure to testify about a fear for safety at the pretrial hearing on the motion to suppress. Defendant further contends that because nothing in the record indicates that he was armed (*i.e.*, Officer Lewellen testified he did not see defendant with a weapon, Officer Lewellen testified that defendant did not turn or make any move for a weapon when confronted, and drug possession is not a violent crime inherently indicative of weapons possession), Officer Lewellen must have been searching for contraband.

■ Defendant's contentions, as well as his entire argument in this regard, are misplaced for several reasons. First, though Officer Lewellen did not testify at the pretrial motion as to a fear for his safety

---

[1]While we recognize that a *Terry* stop and a *Terry* frisk or pat-down are two different concepts meriting their own analyses, we note that defendant does not contest the validity of the stop in this cause. Accordingly, we too focus our attention on his complaint at issue: the validity of the *Terry* pat-down search.

upon opening the apartment door and seeing defendant, he did so testify at trial. In fact, defense counsel posed several questions to Officer Lewellen about the pat-down search at that time. It is true that Officer Lewellen testified that he did not see defendant with a gun or weapon. However, Officer Lewellen repeatedly stated that he performed the search for his "safety" and that the search was a "protective pat-down." Because defendant asks that we review the trial court's decision on the motion to suppress, we may consider not only the evidence presented at the suppression hearing, but also that introduced at trial. See *People v. Kidd*, 175 Ill. 2d 1, 25 (1996); see also *People v. Brooks*, 187 Ill. 2d 91, 127 (1999) (reviewing court may consider evidence at trial in affirming ruling at prior pretrial hearing because this "is akin to a harmless error analysis"—whether there was sufficient evidence to support court's pretrial determination is irrelevant when its decision is supported by evidence introduced at trial); *People v. Caballero*, 102 Ill. 2d 23, 34-36 (1984) (reviewing court "may consider trial evidence in determining whether the trial court's decision denying a motion to suppress was correct" because "the pretrial ruling on suppression is not final and may be changed or reversed at any time prior to final judgment"); see also *People v. Sims*, 167 Ill. 2d 483, 500-01 (1995) (we may affirm trial court's suppression ruling for any reason in record, even if not articulated by that court in reaching its decision). Therefore, defendant's contention that Officer Lewellen never testified as to safety concerns is incorrect.

So, too, is his assertion that the record clearly indicates he was not armed and that Officer Lewellen had no reason to believe he was armed. The trial court presumably found Officer Lewellen's testimony credible because it deemed the pat-down proper, and denied defendant's motion to suppress, based on Officer Lewellen's "observations," the "circumstances" as he presented them and "his level of experience." The record supports this conclusion. Officer Lewellen testified that he received a radio call about a certain car, saw defendant drive up in that very car to the apartment building where he was executing a search warrant for drugs, exit the car, reach back inside the rear portion, pull out a rectangular gray brick package, pull up his shirt, put the package in his waistband, and then conceal it by placing his shirt over his pants. Officer Lewellen also testified that, in his 10 years of experience as a police officer, he had seen brick packages wrapped like that "at least a thousand" times and that this is how kilos of cocaine are packaged. He further testified that he saw defendant leave the car and approach the apartment building's entrance. Then, less than 30 seconds later, defendant knocked on the door of the very apartment being searched for drugs. From this, Of-

ficer Lewellen had reason to believe that defendant had just committed and/or was about to commit a crime.

Furthermore, before touching defendant, Officer Lewellen asked him who he was and how he arrived at the apartment. Officer Lewellen testified that defendant responded he took public transportation. Because this was in direct contradiction to what he had just witnessed, Officer Lewellen had further reason to infer that defendant was lying and was involved in some kind of dangerous criminal activity, putting his safety at risk. Moreover, Officer Lewellen testified that he saw a "bulge" under defendant's shirt. Further indicative that Officer Lewellen's search was for protective purposes rather than to find drugs is his testimony that after discovering the brick package during the search and removing it from defendant's waistband, he continued to pat defendant down. He testified that the first object he found on defendant's person was the package, and that upon continuing the pat-down, he found a pager and a set of keys. The trial court could well have reasoned that Officer Lewellen was not just searching for drugs, since he continued and completed the pat-down search after finding and removing the package. Officer Lewellen testified that before touching defendant, he had seen him hide what he believed, through his experience, to be a kilo of suspected cocaine in his waistband. This, however, along with his testimony that he did not see a gun and that the crime of possession of a controlled substance with intent to deliver may not necessarily indicate the presence of a gun, does not nullify Officer Lewellen's testimony that he feared for his safety based on the circumstances. See *Sorenson*, 196 Ill. 2d at 434 ("[t]he fact that the officer may have also believed that the defendant possessed illegal drugs did not negate the officer's concern for his safety").

Based on the record here, which is quite indicative of Officer Lewellen's experiences and observations of the circumstances at hand, we find no support for defendant's contention that the pat-down search violated the provisions of *Terry* because he was looking for drugs, not weapons.

### 3. Probable Cause

Defendant's second contention of error in the trial court's denial of his motion to suppress is that even if the pat-down search was appropriate, Officer Lewellen did not have probable cause to believe that the brick package contained cocaine and, thus, did not have the authority to seize it. Defendant argues that neither the plain touch doctrine, nor the plain view doctrine which the trial court specifically found gave Officer Lewellen probable cause, support the court's conclusion.

■ If an officer, while conducting a lawful pat-down search, feels an object that he believes is not a weapon but whose shape or weight makes its identity apparent, he may seize it if he has probable cause to believe that the object is contraband. See *Blake*, 268 Ill. App. 3d at 739-40, relying on *Minnesota v. Dickerson,* 508 U.S. 366, 124 L. Ed. 2d 334, 113 S. Ct. 2130 (1993). This is known as the plain feel or plain touch doctrine. Similarly, the plain view doctrine allows a police officer to seize an object without a warrant if (1) he views the object from a place he is legally entitled to be, and (2) the object is immediately apparent to him to be evidence of a crime, contraband or otherwise subject to seizure. See *People v. Watkins,* 293 Ill. App. 3d 496, 502 (1997). Like the plain touch doctrine, plain view requires an officer to have probable cause before he may invoke it to conduct a proper seizure. See *People v. Greene,* 289 Ill. App. 3d 796, 804 (1997); see also *Watkins,* 293 Ill. App. 3d at 502 ("[t]he requirement that an item's criminal nature be 'immediately apparent' essentially translates into a probable cause requirement").

■ Probable cause is more than a mere suspicion that an offense has been committed and the individual in question committed it; however, probable cause does not require evidence sufficient to convict. See *People v. Moody,* 94 Ill. 2d 1, 7-8 (1983), quoting *Brinegar v. United States,* 338 U.S. 160, 175, 93 L. Ed. 1879, 1890, 69 S. Ct. 1302, 1310 (1949) (probable cause deals with " 'probabilities[,] *** the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act' "); *Blake,* 268 Ill. App. 3d at 740. Whether probable cause existed at the time the officer felt the object during the pat-down search "must be determined from the standpoint of the officer, with *his skill and knowledge* being taken into account, and the subsequent credibility determinations must be made by the trial court." (Emphasis in original.) *People v. Stout,* 106 Ill. 2d 77, 87 (1985) (what constitutes probable cause must be determined from his standpoint in that situation based on his experiences, not from that of average citizen under similar facts). This determination must be made by "viewing the evidence taken as a whole." *Moody,* 94 Ill. 2d at 8 (while "pieces of evidence" in officer's possession individually did not amount to probable cause, it existed when evidence was reviewed as a whole).

■ Defendant first argues that Officer Lewellen's seizure of the brick package from defendant's waistband was not supported by the plain touch doctrine because the knowledge Officer Lewellen gained from touching the package during the pat-down search did not amount to probable cause that it contained contraband. Defendant's reasoning for this assertion is his claims that Officer Lewellen did not testify as

to how the package felt, his experience in detecting drugs through touch, and that the information he obtained as a result of touching the package led him to believe it was contraband. Defendant also insists that Officer Lewellen's testimony that he did not know the package contained cocaine until he poked a hole in it is further evidence that his touching of the package during the pat-down did not give him probable cause.

While both parties argued the plain touch doctrine in the trial court, the court did not really consider this argument. On review, however, we believe this doctrine supports the court's ultimate decision that probable cause existed for the seizure of the package. Officer Lewellen testified that when his partners opened the apartment door and he first saw defendant in front of him, he noticed an obvious "bulge" or "lump" protruding from his front waistband. He also testified that in the midst of his protective pat-down search, he felt "a very hard object" in defendant's front waistband that was rectangular in shape. In addition, though Officer Lewellen may not have testified as to his exact experiences using the plain touch doctrine on prior occasions, he did inform the court that he had been a police officer for 10 years and worked in the narcotics division. He stated his "experience as a narcotics detective" indicated to him that defendant had contraband which he was delivering. As far as poking the package, defendant mischaracterizes Officer Lewellen's testimony. Officer Lewellen stated that he knew for certain that the package contained cocaine after poking it. However, what he knew for certain after opening the package is irrelevant as to whether he had probable cause to suspect the package contained contraband at the time he seized it. Viewing the evidence as a whole, we believe Officer Lewellen had probable cause, based on his standpoint in these circumstance as well as his skill, knowledge and experience, to believe that the package he felt during the pat-down search of defendant was contraband and to thus properly seize it pursuant to the plain touch doctrine.

Even if Officer Lewellen did not have probable cause for the seizure of the package based upon touch, we believe, as the trial court specifically concluded, that he did so pursuant to the plain view doctrine. First, Officer Lewellen was lawfully in an area when he viewed the package. He was in the midst of executing a search warrant in the apartment when, after receiving a radio call, he moved to the back bedroom, looked out the window and saw defendant. From two floors above, he had a clear, unobstructed view of him in the parking lot. He saw him exit the car with nothing in his hands, reach into a panel in the back driver's side, emerge with a gray, brick-size package, put it in his waistband and conceal it with his shirt. Officer Lewel-

len testified that it was his experience that cocaine was often transported and hidden in panels of automobiles known as "traps." He also described how he had seen packages just like the one he saw in defendant's possession—rectangular and wrapped in gray duct tape—at least a thousand times before and that his experience led him to believe "kilos" such as this one contained suspected cocaine. He also saw him approach the entrance to the apartment building, and less than 30 seconds later upon opening the apartment door, Officer Lewellen was able to identify him as the man he saw in the parking lot; he noticed that he had the same bulge in exactly the same place he saw him put the package while outside in the parking lot. Thus, we find no reason to disturb the trial court's conclusion that Officer Lewellen properly seized the package from defendant's waistband pursuant to the plain view doctrine because the record indicates that Officer Lewellen's experience, as well as defendant's actions in the parking lot which Officer Lewellen observed that day from the apartment, gave him probable cause to believe the package contained contraband.

Therefore, we conclude that the trial court did not err in denying the motion to quash arrest and suppress the evidence found on defendant's person based on his contentions that Officer Lewellen conducted an unlawful pat-down search and lacked probable cause to believe the brick package seized was contraband. Accordingly, we will not reverse defendant's conviction outright.

## B. Ineffective Assistance of Counsel

Defendant next contends that his conviction should be reversed and the cause remanded because he was denied effective assistance of trial counsel. He bases this on defense counsel's failure to move to suppress the evidence seized as a result of the warrantless search of the car. He asserts that this was professionally unreasonable and that there is a reasonable probability that had defense counsel filed such a motion, the court would have granted it and not convicted him of, and sentenced him on, count II of possession of a controlled substance with intent to deliver. We disagree.

■ Generally, we are to evaluate defendant's claim of ineffective assistance of trial counsel under the two-part test established in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984): whether counsel's representation fell below an objective standard of reasonableness and whether this prejudiced defendant. See *People v. McCallister*, 193 Ill. 2d 63, 89 (2000). However, if we find that defendant has not suffered prejudice as a result of the actions of trial counsel at issue, a deficient performance analysis is unnecessary.

See *Strickland*, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069-70 (reviewing court need not determine whether counsel's performance was deficient if it concludes that no prejudice resulted; "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice *** that course should be followed"); see also *People v. Albanese*, 104 Ill. 2d 504, 527 (1984).

■ In the instant case, we find it difficult to imagine what strategy or tactic defense counsel was attempting to employ in not filing a motion to suppress the evidence found in the car. See *Simmons v. United States*, 390 U.S. 377, 394, 19 L. Ed. 2d 1247, 1259, 88 S. Ct. 967, 976 (1968) (when a defendant testifies in support of a motion to suppress evidence on illegal search and seizure grounds, his testimony, even if it concedes ownership of the evidence, cannot later be admitted against him at trial on the issue of his guilt or innocence); *People v. Steels*, 257 Ill. App. 3d 123, 127-28 (1995) ("no defense strategy" could have militated defense counsel's omission to file motion to suppress evidence found in suitcase reasonably assumed to belong to the defendant in light of the law as set forth in *Simmons* that the "admission of ownership required for the motion to suppress would not have been admissible at trial"); *People v. Dowery*, 174 Ill. App. 3d 239, 243 (1988) (a defendant's disclaimer of property interest to police does not result in a loss of standing to challenge the evidence later). Nevertheless, we need not address whether defense counsel's failure to file the motion constituted deficient performance because, as further outlined below, defendant fails to demonstrate that he was prejudiced by this omission. See *Albanese*, 104 Ill. 2d at 527.

The second part of the *Strickland* test requires defendant to show that there is a reasonable probability that the motion, if filed, would have been granted and that the outcome of the trial would have been different. See *People v. Little*, 322 Ill. App. 3d 607, 611 (2001); *Steels*, 277 Ill. App. 3d at 128. Applying this to the instant case, then, the question becomes: did the officers have a legal right to search the car? If they did not, there is a reasonable probability that the trial court would have granted the motion, and thus changed the outcome of the trial, as there would have been no evidence to support count II of the possession with intent to deliver charge. However, if the officers did have a legal right to search the car, we cannot assume the court would not have granted the motion to suppress and the outcome of the trial would not have changed. From our review of the record here, as well as case law presented below, we conclude that the officers did have a right to search the car. Thus, because a motion to suppress the evidence found therein would have been futile, defense counsel's failure to file did not cause defendant prejudice; accordingly,

defendant's claim of ineffective assistance must fail. See *People v. Robinson*, 299 Ill. App. 3d 426, 435 (1998) ("trial counsel's failure to file a motion to suppress does not establish incompetent representation, especially when that motion would be futile").

■ "It is well recognized that a warrantless search of an automobile may be permissible where the searching officer has probable cause to believe that the vehicle contains contraband." *People v. Clark*, 92 Ill. 2d 96, 99 (1982); see *People v. Wolsk*, 118 Ill. App. 3d 112, 119-20 (1983) ("when police officers have probable cause to believe that there is incriminating evidence inside an automobile, the officers may conduct a warrantless search of the vehicle, even after it is in police custody"); *People v. Hamilton*, 251 Ill. App. 3d 655, 662 (1993) ("warrantless search is permissible if an officer has probable cause to believe there is contraband in the car"). That the car is immobilized does not defeat justification for its search in this regard, nor does a determination that the car's contents would not have been tampered with during the time necessary to obtain a warrant. See *Wolsk*, 118 Ill. App. 3d at 120. The focus is whether the searching officer had probable cause for the search: "it must be shown that the totality of the facts and circumstances known to the officer at the time of the search would justify a reasonable person in believing that contraband was present in the automobile." *Clark*, 92 Ill. 2d at 100; see *People v. Smith*, 95 Ill. 2d 412, 419 (1983) (same, quoting *Clark*); *Hamilton*, 251 Ill. App. 3d at 662 ("the totality of the circumstances known to the officer *at the time of the search* must be considered" (emphasis in original)). Once there is probable cause to believe the car contains contraband, the warrantless search may proceed and may comprise any interior compartment of or in the car that might reasonably hold the contraband. See *Smith*, 95 Ill. 2d at 418; *People v. Lawrence*, 174 Ill. App. 3d 818, 822 (1988).

■ Here, the evidence adduced at trial showed that Officer Lewellen had probable cause to search the car and its interior panels. It is true that he testified that he could not see any contraband while standing in the parking lot looking into the car. However, he testified that from his vantage point while in the apartment two floors above, he saw defendant get out of the car, reach into a panel in the back portion behind the driver's seat and retrieve the gray brick package which he believed, based on his experience, contained suspected cocaine. He also testified that panels in cars such as this one were called "traps." Officer Lewellen saw defendant put the package in his waistband. After lawfully patting down defendant and retrieving the package, he and his fellow officers determined that the package did indeed contain suspected cocaine—*i.e.*, contraband. Under the totality of the

circumstances (Officer Lewellen saw defendant retrieve the package from a trap in the car; Officer Lewellen's experience indicated to him that a package of this size, wrapping and hardness contained suspected cocaine; Officer Lewellen found this to be so upon testing the package; defendant had arrived at an apartment officers were in the midst of searching for contraband; defendant lied about not having driven the car; defendant had a set of keys that fit the car on his person; defendant had drug-related paraphernalia—a pager), Officer Lewellen had probable cause at that time to believe that the car might contain more contraband. See *Lawrence*, 174 Ill. App. 3d at 822 (it was reasonable for officer, "once he had observed that the vehicle contained some items of contraband, to believe the vehicle might contain further contraband"). At this point, he was not required to obtain a warrant before searching the car. Moreover, with this probable cause, he had the legal right to not only search the car but any compartment therein, locked or unlocked, that he believed would contain contraband. This included the two "traps": the driver's side panel which was ajar (in which he found the second gray brick package containing cocaine, the .25-caliber weapon with five live rounds, the scale and plastic bags) and the passenger's side panel which was locked (in which he found a large plastic bag with a white chunky substance, five smaller bags containing the same substance and $4,370 in cash). See *Clark*, 92 Ill. 2d at 100-01 (officer with probable cause to search vehicle properly took keys from ignition and opened locked glove compartment which contained drugs because "it was not unreasonable for the officer to believe that [the drugs] would be found in the glove compartment"); see also *Smith*, 95 Ill. 2d at 420 (officer had probable cause to search car and small wooden box he saw before entering car because his knowledge and experience indicated that this box was a "one-hitter box" commonly used to carry cannabis); *Wolsk*, 118 Ill. App. 3d at 120 (circumstances establishing belief of contraband in car gave officer probable cause to search it as well as trunk, interior compartment and suitcase therein). Even the trial court here opined that the search of the car was proper. In first commenting on the search at the hearing on the motion to suppress the evidence found on defendant's person, the court questioned its validity and stated that it would take the time to review case law on this subject. In handing down its decision on the motion, and before defense counsel pointed out that the motion did not include the evidence in the car, the court stated that, in considering its research, it believed "the search of the car was permissible, was allowable." From all this, we conclude that the officers had a legal right to search the car—under the circumstances, they had probable cause to believe contraband was contained therein and, thus, they did not need a warrant to effectuate the search.

Accordingly, there was not a reasonable probability here that the trial court would have granted a motion to suppress the evidence found in the car and that the outcome of the trial would have been different. Because the motion would have been futile, defendant cannot prove that defense counsel's failure to file the motion actually prejudiced him. See *Robinson*, 299 Ill. App. 3d at 435 (when motion to suppress would have been futile, counsel's failure to file it does not amount to ineffective assistance). Consequently, defendant's claim for the reversal of his conviction and remand for a new trial due to ineffective assistance of counsel must fail.

## C. Foundation for Expert Opinion

Defendant's third contention on appeal is that the State failed to prove him guilty beyond a reasonable doubt because it did not establish a proper foundation for Dr. Kruski's opinion that the evidence seized contained cocaine. He asserts that we must reverse his conviction because the State did not prove that the facts Dr. Kruski relied on were of the type reasonably relied on by experts in his field, and the State did not prove that the GCMS machine was functioning properly or that Dr. Kruski ran the preliminary tests properly. We disagree.

As a threshold matter, we conclude that defendant has waived this argument. The law is clear that both a trial objection and a written posttrial motion are required to preserve an issue for appeal (see *People v. Steidl*, 142 Ill. 2d 204, 235 (1991)), and if not properly preserved in this manner, the issue is waived (see *People v. Fields*, 135 Ill. 2d 18, 59-60 (1990)). Though defendant filed a posttrial motion on the issue of Dr. Kruski's foundation for his opinion, he never objected to this at trial during Dr. Kruski's testimony. Moreover, his posttrial motion did not address his contention now on appeal that the State failed to show that the facts Dr. Kruski relied on were not of the type reasonably relied on by other experts. Thus, this issue of foundation is waived. Defendant contends in his reply brief that because this issue challenges the sufficiency of the evidence used to convict him, it is nonwaivable. For this proposition, he cites the case of *People v. McGee*, 326 Ill. App. 3d 165, 168 (2001), which states that "issues concerning the sufficiency of the evidence are recognized exceptions to the waiver rule." However, defendant fails to consider the complete interpretation of *McGee*. That case relied on *People v. Lopez*, 242 Ill. App. 3d 160, 162 (1993), which did not make the nonwaivability exception defendant asserts to be a general rule. Instead, *Lopez* stated that exceptions to the waiver rule were, and are, made "where the allegation of error would not normally be expected to be included in a posttrial motion *** or if the reviewing court elects to take notice of plain

errors affecting substantial rights pursuant to Supreme Court Rule 615(a)." *Lopez,* 242 Ill. App. 3d at 162. Defendant's allegation of error here would normally be expected to be included in an objection or posttrial motion: defendant was present when Dr. Kruski testified and defense counsel cross-examined Dr. Kruski. No objection was ever made during his testimony regarding the reliability of the evidence he testified to or its reliance by other experts in the field of forensic chemistry. Had an objection been timely made, it could have been cured. See *People v. Bynum,* 257 Ill. App. 3d 502, 514-15 (1994) ("a timely and specific objection" gives the State reasonable opportunity to correct a deficiency in foundational requirements, allowing for an easy cure of the matter).

Moreover, under the second part of *Lopez,* defendant's contention as to proper foundation is an attack going to the admissibility of the evidence presented in Dr. Kruski's opinion, not to its sufficiency. Arguably, sufficiency involves absence of proof of a basic element of the crime. Defendant here is not challenging the lack of proof as to the existence of an element of the crime, since Dr. Kruski testified to the identity of the controlled substance. The challenge is to the failure to lay a proper foundation for the proof of that element. This goes to a determination of its admissibility, rather than sufficiency of the evidence presented. Accordingly, defendant's fundamental or substantive rights are not involved here. See *Bynum,* 257 Ill. App. 3d at 515.

The decision in *People v. Bynum,* 257 Ill. App. 3d 502, is squarely on point. As in the instant case, the defendant in *Bynum* challenged on appeal the trial court's failure to strike the testimony of the laboratory technician who tested the suspect controlled substance found on him with a GCMS machine. The court discussed the foundational requirements for testimony given by such experts as adopted by our supreme court in *Wilson v. Clark,* 84 Ill. 2d 186 (1981): the State must show that the facts relied upon by the expert are of the type reasonably relied upon by other experts in the field, and, if the testimony is based on a mechanical device, the expert must offer some foundational proof as to the method of recording the information and the device's proper function at the time of testing the evidence. Like Dr. Kruski here, the technician in *Bynum* did not testify that the GCMS device was one generally relied upon by experts in her field. However, unlike Dr. Kruski, the technician also failed to explain how the device was calibrated or why she knew the results were accurate. The defendant in *Bynum* did not object to her testimony on the grounds of foundation but, rather, hearsay. Her opinion was admitted into evidence. Upon review, we concluded that "[t]he State's failure to establish the necessary foundation proof was therefore sufficient to preclude [the

technician's] testimony from being accepted into evidence\*\*\*—*had [the] defendant objected on these grounds.*" (Emphasis added.) *Bynum*, 257 Ill. App. 3d at 514. Again, however, defendant only objected on hearsay grounds at the time of the testimony. We found that this objection did not fairly raise the issue of whether a proper foundation had been laid for the technician's expert testimony, and thus, the defendant had waived any argument in this regard. See *Bynum*, 257 Ill. App. 3d at 514-15 (objecting to evidence on a specific ground is a waiver of all other objections not specified; this is especially true in cases involving foundational requirements because of their easy curability at trial). And, in addressing the possible opportunity a defendant may have to introduce this argument under plain error, we went further to hold that the failure to lay a proper foundation for expert testimony does not amount to a violation of a defendant's substantial rights. See *Bynum*, 257 Ill. App. 3d at 515 ("[n]or do we believe that the failure of the State to lay a proper technical foundation \*\*\* is a violation of [the] defendant's 'substantial rights' sufficient to warrant reversal of this case under the supreme court's plain error rule").

In the alternative, even were we to conclude that defendant here did not waive this issue and instead choose to address its merits, the result would remain the same. The party opposing the admission of the expert's opinion has the burden to challenge its sufficiency and reliability on cross-examination. See *People v. Lind*, 307 Ill. App. 3d 727, 739 (1999). Ultimately, the trial court "has the discretion to determine whether the underlying facts, data, or opinions upon which an expert bases an opinion are of a type reasonably relied upon by experts in the particular field, and a reviewing court will not disturb its determination absent an abuse of that discretion." *Lind*, 307 Ill. App. 3d at 737; see *People v. Houser*, 305 Ill. App. 3d 384, 394 (1999). The record in the instant case reflects that both parties stipulated to Dr. Kruski's expertise in analyzing controlled substances. Dr. Kruski provided lengthy testimony about both his method of testing the brick packages and the proper functioning of the GCMS machine. He testified about each of the five preliminary tests: how he conducted them, what each one consisted of, their results, etc. Then, he testified about the GCMS machine: how it worked, how to read the results, the results in his testing of the evidence in this case, etc. Moreover, he testified that the GCMS machine was "daily tuned" and he described how he ran blank tests to corroborate the results in this case. We believe that this testimony, in addition to the fact that appellate courts time and again deal with and accept GCMS testing in controlled substance

cases,[2] was a sufficient basis for the trial court to use its discretion and allow Dr. Kruski's testimony.

Accordingly, defendant's claim that his conviction must be reversed on grounds relating to the foundation for Dr. Kruski's testimony must fail.

## D. Chain of Custody

■ Defendant's final contention involves chain of custody. He claims that we must reverse his conviction because the State's failure to prove a continuous chain of custody, along with discrepancies in the weight, size and appearance of the evidence, indicate that it did not prove him guilty of the crime beyond a reasonable doubt. We disagree.

The State is not required to exclude every possibility of tampering or contamination of the evidence used to convict defendant. See *Bynum*, 257 Ill. App. 3d at 510. Rather, all it must prove is that reasonable protective measures were taken after the evidence was seized and that it is unlikely the evidence was altered. See *Bynum*, 257 Ill. App. 3d at 510 ("chain of custody must be sufficiently complete to make it improbable that the evidence has been subject to tampering or accidental substitution"). Unless defendant can show tampering, any deficiencies in the chain of custody go to the weight given the evidence, not its admissibility. See *Bynum*, 257 Ill. App. 3d at 510. Accordingly, evidence may be properly admitted, even where there is a missing link in the chain of custody, if "there was testimony which sufficiently described the condition of the evidence when delivered which matches the description of the evidence when examined." *Bynum*, 257 Ill. App. 3d at 510; see *People v. Pettis*, 184 Ill. App. 3d 743, 753-54 (1989).

Defendant first asserts that there was a missing link in the chain of custody, thereby defeating the State's claim that it took reasonable protective measures to assure the accuracy of its tests. He argues that the break in the chain occurred when Dr. Kruski indicated that he could not remember exactly who gave him the evidence to test and the State failed to have that person testify at trial. However, Officer Horton testified that while Officers Lewellen and Smith seized the evidence at the scene, he was in charge of securing it, labeling it and transporting it back to the station. He put all the evidence in evidence bags and labeled them with defendant's name. He testified that he brought the evidence to the station and began filling out the standard, required forms to inventory the evidence. After weighing the brick

---

[2]In addition to *Bynum*, several other cases discuss GCMS testing, including *People v. Raney*, 324 Ill. App. 3d 703 (2001), *People v. Evans*, 296 Ill. App. 3d 1 (1997), *Martin v. Thompson*, 195 Ill. App. 3d 43 (1990), and *People v. Ripa*, 80 Ill. App. 3d 674 (1980).

packages, Officer Horton recorded their weights, along with a list of all the other items seized, on the inventory sheets, assigned numbers to the bags, and placed the bags in a sealed condition in the crime lab vault. In addition, Dr. Kruski testified that when he received the evidence, it was still sealed in its bags. He further testified that the first thing he did was verify both the contents of the bags and the numbers assigned to them with the information and numbers recorded on the inventory sheets; the contents and numbers matched. At trial, both Officer Horton and Dr. Kruski identified the evidence bags and their contents. The testimony of Dr. Kruski, who tested the evidence, and Officer Horton, who was present at the scene, was consistent and corroborative; this indicates that reasonable protective measures were taken after seizure. Thus, all the State had to prove was that it was unlikely that the evidence was compromised. While the fact that no one testified as to removing the evidence bags from the vault and delivering them to Dr. Kruski to test does create a gap in the chain of custody, "this gap is not sufficient to require that the evidence be excluded absent some other indication of mishandling." *Bynum*, 257 Ill. App. 3d at 512 (gap existed where technician's supervisor was not called to testify that he removed evidence bag and gave it to technician to test; however, this did not require that evidence be excluded for inadequate chain of custody).

Defendant next argues that there are sufficient discrepancies in the testimony regarding the weight, size and appearance of the cocaine packages to require the State to exclude all possibility of tampering. Specifically, he notes the testimony of Officer Horton and Dr. Kruski which signified a difference in weight, the testimony of Officer Lewellen and Dr. Kruski which signified a difference in size, and the testimony of Officer Horton, Officer Lewellen and Dr. Kruski which signified a difference in appearance. However, defendant's arguments regarding these "discrepancies" are without merit.

First, as to the weight of the packages, the reason for the discrepancy between what Officer Horton found (1,084 grams for the package found on defendant and 1,743 grams for that found in the car) and what Dr. Kruski found (983 grams for the package found on defendant and 1,629.7 grams for that found in the car) was explained. Officer Horton testified that he weighed the packages with their gray, heavy-duty duct tape wrapping still intact, while Dr. Kruski testified that he weighed the packages without this wrapping. Similarly, the reason for the discrepancy in the size of the package found on defendant testified to by Officer Lewellen (2 to 3 inches wide by 8 to 12 inches long by 2 to 3 inches thick) and that testified to by Dr. Kruski (8 to 9 inches wide by 8 to 9 inches long by 1 to 1½ inches

thick) was also explained. When Officer Lewellen testified to these dimensions at the pretrial hearing on the motion to suppress, he did not have the package in front of him; he indicated that he was testifying as to its approximate size. Moreover, he was not the one who inventoried the package. In contrast, Dr. Kruski did have the package in front of him while testifying. At trial, defense counsel questioned Officer Lewellen about the discrepancy; he repeated that the differences were due to the fact that he could only base his pretrial testimony on approximations, as the package was not presented to him at that time; however, the package present for his inspection at trial was the one he seized from defendant's waistband. Third, defendant claims severe discrepancies existed in the appearance of the package seized from his person—namely, that Officer Lewellen first testified he poked a hole in it but later denied this, that Officer Horton testified he poked a hole in it but later said he looked under the wrapping, and that Dr. Kruski testified that the package he received had no holes and was completely sealed. These discrepancies, however, are minor and do not create reasonable doubt. See *People v. Cunningham*, 309 Ill. App. 3d 824, 827 (1999) (minor inconsistencies in testimony do not create reasonable doubt); *(People v. Hruza*, 312 Ill. App. 3d 319, 326 (2000) (minor discrepancies go only to weight); *People v. Vasquez*, 313 Ill. App. 3d 82, 103 (2000) (weight of evidence is for trier of fact to determine, not reviewing court); see also *People v. Robinson*, 30 Ill. 2d 437, 440 (1964) ("minor variations *** pointed to by defendant at most affect the credibility of the witnesses, a matter for the [trier of fact's] determination").

Finally, defendant argues that his conviction must be reversed because the scale, pager and plastic bags seized by the officers at the scene were never presented at trial or admitted into evidence. Defendant contends that this missing evidence further demonstrates discrepancies and gaps in the chain of custody leading to the State's failure to prove him guilty beyond a reasonable doubt. However, this evidence was not used by the State against defendant or considered by the trial court in convicting or sentencing him. Moreover, the crime for which defendant was charged—possession of a controlled substance with intent to deliver—does not require the presence of a scale, pager or plastic bags in order to obtain a conviction. In fact, quantity alone, or even packaging alone, is sufficient to prove intent to deliver beyond a reasonable doubt. See *People v. Robinson*, 167 Ill. 2d 397, 410-11, 414 (1995) (quantity alone, if in an amount that could not reasonably be viewed as meant for personal consumption, is enough to prove intent; cocaine packaged in certain manner (*i.e.*, separate, considerably large taped bricks) is indicative of drug trafficking (*People v.*

*Green*, 256 Ill. App. 3d 496, 501 (1993)) and alone is enough to prove intent). The presence of other items, such as a scale, pager or plastic bags, is only an additional factor that may be used to support a finding of intent to deliver. See *Robinson*, 167 Ill. 2d at 408. In the instant case, the excessive weight of the controlled substance (over 2,000 grams), as well as the manner in which it was packaged (large taped bricks), provides more than enough evidence to establish the elements of the crime beyond a reasonable doubt.

Based on the record, we find that the State proved a sufficient chain of custody in this cause. The discrepancies defendant cites are only minor and do not affect the admissibility of the evidence against him. Therefore, his claims in this regard must fail.

CONCLUSION

For the foregoing reasons, we affirm the holding of the trial court.

Affirmed.

CAHILL and BURKE, JJ., concur.