# Illinois Official Reports

## Appellate Court

---

### *People v. Boswell*, 2014 IL App (1st) 122275

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LAMONT BOSWELL, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-12-2275 |
| Filed<br>Rehearing denied | March 19, 2014<br>June 12, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction for two counts of unlawful possession of a controlled substance was reversed and his sentence to an extended term was vacated on the ground that the trial court erred in denying defendant's motion to suppress where the arresting officers lacked a reasonable suspicion under *Terry* to stop and frisk defendant, notwithstanding testimony that a woman approached the officers and gave them a description of a man she said was selling narcotics at a nearby intersection, since there was no testimony that the officers saw any money or drugs changing hands or that defendant had a large amount of drugs on his person, the frisk of defendant was based only on the suspicion that he was involved in a drug transaction and that "drugs and guns go together," defendant did not make any furtive movements, and the confrontation took place in daylight on a public street. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-CR-3843; the Hon. Maura Slattery-Boyle, Judge, presiding. |
| Judgment | Reversed. Sentence vacated. |

Counsel on Appeal

Michael J. Pelletier, Alan D. Goldberg, and Kate E. Schwartz, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Anthony O'Brien, and Brandon Nemec, Assistant State's Attorneys, of counsel), for the People.

Panel      JUSTICE MASON delivered the judgment of the court, with opinion.
Justices Neville and Pucinski concurred in the judgment and opinion.

## OPINION

¶ 1      Following a jury trial, defendant Lamont Boswell was convicted of two counts of possession of a controlled substance. Due to his criminal history, he was sentenced to an extended term of five years in prison. On appeal, defendant contends that the trial court erred in denying his motion to suppress evidence because the police lacked reasonable suspicion to stop and frisk him and that, therefore, his conviction must be reversed. In the alternative, defendant contends that he must receive a new trial because he represented himself without receiving any of the admonishments required by Illinois Supreme Court Rule 401(a) (eff. July 1, 1984).

¶ 2      Because we find that the protective pat-down of defendant was improper, we reverse the denial of defendant's motion to suppress and, in turn, reverse his conviction.

¶ 3                                 BACKGROUND

¶ 4      Defendant was arrested in Chicago on February 11, 2011. After the State charged him with two counts of possession of a controlled substance (heroin and codeine), defendant filed a motion to suppress evidence. In the motion, defendant argued that the police discovered physical evidence during the course of an unlawful search of his person, and thus, the evidence should be suppressed.

¶ 5      At the hearing on the motion, defendant called one of the arresting officers, Chicago police officer Daniel Prskalo. Officer Prskalo testified that he had been a police officer for 15 years and had witnessed over 100 hand-to-hand narcotics transactions. Officer Prskalo testified that about 2 p.m. on the day in question, he and his partner, Officer Daniel Gomez, were outside their unmarked vehicle when they were approached by a woman they did not know. The woman told the officers that a man was selling narcotics at Cottage Avenue and 43rd Street and that she had purchased narcotics for her own use. She did not tell the officers what kind of narcotics she had purchased or when she had purchased them. The woman gave a description of the seller that included his race, height, weight, approximate age, skin complexion, and

clothing, but Officer Prskalo did not testify to the specific details of that description. The details of the description were also not included in the arrest report.

¶ 6 Officer Prskalo and his partner, who, Prskalo testified, was driving, went to the identified location, which Officer Prskalo characterized as "a known area of narcotic sales based upon the past in my experience." As they approached, Officer Prskalo saw defendant, who matched the description provided by the woman. Officer Prskalo saw defendant clasp hands with a man. He did not see the exchange of money or any other object. Based upon the information received from the woman and defendant's actions and location, Officer Prskalo believed that a hand-to-hand narcotics transaction had taken place. Officer Prskalo further agreed that based on his experience, he knew that "drugs and guns go together," and that it was a reasonable inference that people dealing drugs on street corners may also be in possession of weapons.

¶ 7 Officer Prskalo testified that he and his partner drove past, made a U-turn, and stopped their vehicle. They approached defendant, who was on the sidewalk. Defendant did not attempt to walk or run away and did not make any furtive movements. The officers identified themselves as police, explained why they were at the location, and told defendant they were going to conduct a pat-down. Officer Prskalo agreed that the purpose of the pat-down was for officer safety. After Officer Prskalo began the pat-down, defendant admitted to him that he had "blows," or heroin, on his person. Officer Prskalo then continued the pat-down, during which he recovered suspected heroin, 20 pills contained in a cigarette box, and $191. The officers placed defendant under arrest.

¶ 8 Following argument, the trial court denied defendant's motion to suppress. In doing so, the trial court found that the *Terry* stop was justified because officers had "reliable and accurate information," and that the *Terry* frisk was justified because the officers observed what they believed to be a drug transaction. The trial court also stated that defendant's statement during the pat-down that he had drugs on his person provided "further probable cause."

¶ 9 Subsequently, defendant filed a motion to reconsider, which the trial court denied. The court specifically stated that there was no violation of the fourth amendment and that the *Terry* stop was "good."

¶ 10 At a status hearing on October 13, 2011, the trial court noted that defendant had filed a *pro se* motion to reconsider the denial of the motion to suppress. Defense counsel informed the court that he had explained to defendant that the motion had already been denied. He had also told defendant he must represent himself if he wished to file his own motions. The trial court asked defendant if he wanted to proceed *pro se*, and defendant indicated he did. The court stated, "That's fine. You are going to be held to the same standard as [defense counsel and a senior law student]. You are not a licensed lawyer. Your motion is already stricken. We have litigated it. We are setting it for jury." After a date was selected, the trial court twice reminded defendant that he would be representing himself and stated that the public defender was allowed to withdraw.

¶ 11 At trial, Officer Prskalo testified consistent with his testimony at the hearing on the motion to suppress, adding some detail. He testified that the woman who spoke to him and his partner told them she previously bought narcotics from defendant. She also described defendant as wearing a camouflage jacket, and defendant was wearing such a jacket when the officers spotted him. Officer Prskalo testified that defendant was engaged in conversation with another man on the sidewalk and that the men's hands were clasped. He testified that he asked defendant "a question or two," at which time defendant admitted having a bag of heroin in his

right upper pocket. He stated that he told defendant he was going to search the pocket. Officer Prskalo found suspected heroin in the pocket. Further search resulted in his finding 20 codeine pills in defendant's left upper jacket pocket.

¶ 12 On cross-examination, Officer Prskalo stated that when he approached defendant, he conducted a pat-down for officer safety, defendant's safety, and the safety of citizens in the area. He stated that then, after defendant related that he had heroin in his pocket, he asked defendant if he could search the pocket.

¶ 13 Chicago police officer Daniel Gomez testified that he had been a police officer for 16 years and had observed narcotics transactions and made narcotics arrests hundreds of times. About 2:30 p.m. on the day in question, he and Officer Prskalo were in their unmarked squad car when they were approached by a woman who told them that a black man about 55 or 60 years old, between 5 feet 5 inches and 5 feet 8 inches tall, weighing around 150 to 170 pounds, and wearing a green camouflage outfit was selling narcotics on the 4300 block of Cottage Avenue. The woman stated that she had a drug habit and would usually go to that area to purchase narcotics. The officers drove to the area and saw defendant, who matched the given description, about one-half to three-quarters of a block away. Officer Gomez testified Officer Prskalo, not he, was driving the vehicle. Defendant was in an area known for narcotics activity. Officer Gomez stated that he saw defendant engage in a hand-to-hand narcotics transaction with another individual. He saw some money being exchanged, but could not see what, if anything, defendant handed to the other individual, who then walked away. Officer Gomez related to Officer Prskalo that he "just noticed a hand-to-hand transaction occurred." Officer Prskalo made a U-turn.

¶ 14 Officer Gomez testified that he and his partner got out of their car, approached defendant on foot, and conducted a field interview. He described what happened next: "Officer Prskalo approached him, asked him if he had any sharp objects on him or contraband when Officer Prskalo was doing the protective pat-down; at which time, [defendant] stated that he had one blow on him, which is a term for heroin." After defendant made this statement, Officer Prskalo recovered a bag of suspected heroin from defendant's right jacket pocket. A further search resulted in the recovery of a cigarette box containing 20 pills of suspected codeine.

¶ 15 The State's final witness was a forensic scientist, who testified to the proper chain of custody of the narcotics. She also testified that the laboratory results indicated the substances recovered from defendant tested positive for heroin and codeine. Defendant presented no witnesses and did not testify.

¶ 16 The jury found defendant guilty on both counts of possession of a controlled substance, and the trial court entered judgment on the verdict. Defendant made a motion for a new trial, challenging the reliability of the officers' testimony and arguing that Officer Prskalo had no probable cause to search his pocket. The trial court denied the motion. Subsequently, the trial court sentenced defendant to an extended term of five years in prison.

¶ 17 ANALYSIS

¶ 18 On appeal, defendant contends that the trial court erred in denying his motion to suppress evidence because the police lacked reasonable suspicion to stop and frisk him. He argues that Officer Prskalo did not have a reasonable articulable suspicion that he was engaged in criminal activity or was armed, and therefore, the recovered evidence was the fruit of an unlawful

seizure and search and should have been suppressed. Defendant asserts that the officers were not credible witnesses, as they offered inconsistent testimony with regard to several topics, including which of them was driving their car, whether they were inside or outside of the car when the woman approached them, which of them saw the hand-to-hand transaction, whether currency was visibly exchanged, and at what point defendant told them he had drugs in his pocket. He argues that these inconsistencies are material because they cast doubt on whether the police received an anonymous tip at all, and because they pertain to the only alleged conduct that corroborated the purported tip. Finally, defendant asserts that because there is no basis for his conviction without the recovered evidence, his conviction should be reversed outright.

¶ 19    The State argues that the officers had reasonable suspicion to stop and frisk defendant, and that, after defendant stated that he had "blows" in his pocket, they had probable cause to arrest him and search his pockets incident to arrest. The State does not argue that probable cause existed prior to defendant's admission that he was in possession of narcotics.

¶ 20    An appeal from a trial court's ruling on a motion to suppress presents mixed questions of fact and law. *People v. McDonough*, 239 Ill. 2d 260, 265-66 (2010). We accord great deference to the trial court's factual and credibility determinations and will disturb them only if they are against the manifest weight of the evidence. *McDonough*, 239 Ill. 2d at 266; *People v. Luedemann*, 222 Ill. 2d 530, 542 (2006). However, we review *de novo* the trial court's ultimate determinations with respect to probable cause or reasonable suspicion, as well as the trial court's application of the facts to the law to determine whether suppression is warranted under the facts presented. *McDonough*, 239 Ill. 2d at 266; *People v. Johnson*, 408 Ill. App. 3d 107, 111 (2010).

¶ 21    A police officer may stop a person for temporary questioning if the officer reasonably infers from the circumstances that the person is involved in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 30 (1968); 725 ILCS 5/107-14 (West 2010). When an officer justifiably believes that the individual whose suspicious behavior he is investigating at close range is armed and dangerous, the officer may also conduct a pat-down search to determine if the individual is carrying a weapon. *Terry*, 392 U.S. at 24; *People v. Sorenson*, 196 Ill. 2d 425, 432 (2001). Authority to make a *Terry* stop does not automatically confer authority to conduct a *Terry* frisk. *People v. Linley*, 388 Ill. App. 3d 747, 753 (2009); *People v. Galvin*, 127 Ill. App. 3d 153, 163 (1989) ("Under *Terry*, the question whether a stop is valid is a distinct and separate inquiry from whether a frisk is valid."). While there is no requirement that the officer be absolutely certain that the individual is armed, a reasonably prudent person in the officer's circumstances must be warranted in believing that his safety or that of others was in danger. *Terry*, 392 U.S. at 27; *Sorenson*, 196 Ill. 2d at 433. The officer must be able to point to particular facts that justify the frisk. *Linley*, 388 Ill. App. 3d at 753.

¶ 22    While defendant makes persuasive arguments regarding the lack of justification for the *Terry* stop, that determination ultimately rested on the trial court's assessment of the credibility of Officer Prskalo's testimony. "When a court's ruling on a motion to suppress involves factual determinations and assessments of credibility, we may not disturb the ultimate ruling unless it [is] manifestly erroneous." *People v. DeLuna*, 334 Ill. App. 3d 1, 9 (2002). See also *People v. Sorenson*, 196 Ill. 2d 425, 430-31 (2001) (trial court is in best position to observe witnesses and weigh credibility). Therefore, we assume for purposes of this opinion that the *Terry* stop was justified.

¶ 23    But, as noted, we must assess separately whether the *Terry* frisk was justified. Even assuming the stop of defendant was justified by the combined circumstances of the informant's tip and the hand-to-hand transaction witnessed by the officers, neither officer articulated particular facts to support a belief that defendant was armed or to give rise to a justifiable fear for their safety or the safety of others. We are mindful that at the hearing on the motion to suppress, Officer Prskalo agreed with the prosecutor's leading questions, "In your 14 years [of] experience as a police officer, do you know drugs and guns to go together?" and "Is it a reasonable inference, officer, that those dealing drugs on street corners may also be in possession of weapons?" However, *Terry* requires more than a general belief that drug dealers may carry weapons before a pat-down may be conducted. *People v. Marcella*, 2013 IL App (2d) 120585, ¶ 32; *People v. Rivera*, 272 Ill. App. 3d 502, 509 (1995). "[T]he mere fact that an officer believes drug dealers carry weapons or narcotic arrests involve weapons is insufficient alone to support reasonable suspicion to justify a *Terry* frisk." *Rivera*, 272 Ill. App. 3d at 509. Were the law otherwise, every *Terry* frisk of an individual in an area known for narcotics transactions could be justified on that basis alone. But no case so holds.

¶ 24    *DeLuna*, relied on by the State, does not compel a different result. In *DeLuna*, officers who were executing a search warrant for drugs in an apartment observed defendant exit a vehicle outside the building, reach into the rear of the vehicle and retrieve a gray, " 'brick-size kilo-type package,' " which he then put in the waistband of his pants under his shirt. *DeLuna*, 334 Ill. App. 3d at 4. When defendant a short time later knocked on the door of the apartment, one of the officers conducted a pat-down search and recovered the package, later determined to contain cocaine. *Id.* The officer did not observe defendant with a weapon or articulate any concrete basis upon which to conclude that defendant was armed. The officer did, however, testify at trial that he performed the pat-down search for his safety. *Id.* at 10-11. The court rejected defendant's contention that because the officer's pat-down search was for the purpose of recovering contraband, not weapons, his motion to suppress should have been granted.

¶ 25    This case presents a very different scenario. Here, even crediting the testimony that one of the officers observed money changing hands, there is no evidence in the record that either officer observed any drugs, much less a large quantity of drugs, in defendant's possession. Further, the defendant in *DeLuna* arrived at the very location where officers had probable cause to believe drugs would be found and in possession of a package that, in the officer's experience, appeared to contain drugs. Here, in contrast, defendant was merely standing on a public street and neither officer observed him in possession of any quantity of drugs. Finally, the quantity of drugs observed by the officer in *DeLuna* could lead a reasonable officer to believe that the individual possessing them was likely to be armed and the officer, in fact, testified, that he conducted the pat-down for his safety. But in this case, other than Officer Prskalo's one-word agreement with the prosecutor's suggestion that "drugs and guns go together," Officer Prskalo frisked defendant based only on a suspicion that he was involved in a drug transaction and, therefore, may have been armed. There is no evidence that (1) defendant engaged in any furtive movement, (2) the officers observed any bulges in defendant's clothing, or (3) defendant attempted to walk or run away. Further, the officers were on a public street during daylight hours. The evidence in this case does not support any articulable suspicion that a protective pat-down was necessary. See *Rivera*, 272 Ill. App. 3d at 509.

¶ 26        The protective pat-down of defendant was improper. Accordingly, the evidence recovered as a result of the search should have been suppressed and we reverse the judgment of the circuit court denying defendant's motion to suppress. Without the suppressed evidence, the State cannot prove beyond a reasonable doubt that defendant possessed heroin or codeine. Therefore, we reverse defendant's conviction outright and vacate his sentence. *Linley*, 388 Ill. App. 3d at 753.

¶ 27        Given our disposition, we need not address defendant's alternative contention that he should be granted a new trial because he represented himself without receiving any of the admonishments required by Illinois Supreme Court Rule 401(a) (eff. July 1, 1984).

¶ 28        Reversed. Sentence vacated.